**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky, Esq.
New Jersey Resident Partner
Michael R. Darbee, Esq.
300 Carnegie Center, Suite 220
Princeton, New Jersey 08540
Phone: (609) 750-2646
Fax: (609) 897-7286
Stephen.Orlofsky@BlankRome.com
Michael.Darbee@BlankRome.com

**BLANK ROME LLP**
*A Pennsylvania LLP*
Anthony B. Haller, Esq. (*pro hac vice*)
Kevin M. Passerini, Esq.
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Fax: (215) 569-5555
Anthony.Haller@BlankRome.com
Kevin.Passerini@BlankRome.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HO-HO-KUS, INC.,<br><br>                                    *Plaintiff,*<br><br>        v.<br><br>STEVEN SUCHARSKI, JANEEN<br>SUCHARSKI and SAJE AEROSPACE,<br>INC.,<br><br>                                    *Defendants.* | Civil Action No.: 2:23-cv-01677<br><br>**DEFENDANTS STEVEN SUCHARSKI,<br>JANEEN SUCHARSKI, AND SAJE<br>AEROSPACE, INC.'S MOTION TO<br>DISMISS PLAINTIFF'S COMPLAINT** |

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendants Steven Sucharski ("Sucharski"), Janeen Sucharski ("Mrs. Sucharski"), and Saje Aerospace, Inc. ("Saje") (collectively, "Defendants") hereby move to dismiss in its entirety the Complaint filed by Plaintiff Ho-Ho-Kus, Inc. ("Plaintiff" or "HHK") under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) as set forth fully in the accompanying Memorandum of Law, which is incorporated by reference as though fully set forth herein. Defendants respectfully request entry of Order in the proposed form attached hereto granting this Motion and dismissing Plaintiff's claims against Defendants.

1

Dated:    April 10, 2023                **BLANK ROME LLP**
                                        *A Pennsylvania LLP*

                                        */s/ Stephen M. Orlofsky*
                                        Stephen M. Orlofsky (NJ ID: 012431974)
                                        New Jersey Resident Partners
                                        Michael R. Darbee (NJ ID: 119682014)
                                        300 Carnegie Center, Suite 220
                                        Princeton, New Jersey 08540
                                        Tel.: 609-750-2646
                                        Fax: 609-897-7286
                                        stephen.orlofsky@blankrome.com
                                        michael.darbee@BlankRome.com
                                        *Attorneys for Defendants*


                                        Anthony B. Haller, Esq.
                                        Kevin M. Passerini, Esq.
                                        One Logan Square
                                        130 N. 18th Street
                                        Philadelphia, PA 19103
                                        Phone: (215) 569-5500
                                        Fax: (215) 569-5555
                                        Anthony.Haller@BlankRome.com
                                        Kevin.Passerini@BlankRome.com

**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky, Esq.
New Jersey Resident Partner
Michael R. Darbee, Esq.
300 Carnegie Center, Suite 220
Princeton, New Jersey 08540
Phone: (609) 750-2646
Fax: (609) 897-7286
Stephen.Orlofsky@BlankRome.com
Michael.Darbee@BlankRome.com

**BLANK ROME LLP**
*A Pennsylvania LLP*
Anthony B. Haller, Esq. (*pro hac vice*)
Kevin M. Passerini, Esq.
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Fax: (215) 569-5555
Anthony.Haller@BlankRome.com
Kevin.Passerini@BlankRome.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HO-HO-KUS, INC., | Civil Action No.: 2:23-cv-01677 |
| *Plaintiff,* | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS STEVEN SUCHARSKI, JANEEN SUCHARSKI, AND SAJE AEROSPACE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| STEVEN SUCHARSKI, JANEEN SUCHARSKI and SAJE AEROSPACE, INC., | |
| *Defendants.* | |

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................2

I.    The Parties ..................................................................................................2

II.   Sucharski Has No Contractual Obligations to HHK ..................................3

III.  HHK Demands Sucharski Sign an Indemnification Agreement and Terminates His Employment ...................................................................3

IV.   Establishment and Operation of Saje After Sucharski's Termination .......6

V.    Speculative Allegations of Wrongdoing and Harm ...................................6

ARGUMENT .......................................................................................................7

I.    The Court Must Dismiss All Claims Against Predicated Upon Plaintiff's Speculative, Conclusory Allegation of Misappropriation ....................8

    A.    No Claim of Misappropriation "Upon Information and Belief" Is Plausible .........9

    B.    Plaintiff Has Not Plausibly Established the Elements of a Claim for Statutory Misappropriation of Trade Secrets under the DTSA or NJTSA ............10

        1.    Plaintiff Has Not Pleaded the Existence of a Protectable Trade Secret.................11

        2.    Plaintiff Has Not Pleaded any Knowing Improper Acquisition, Use, or Disclosure of a Trade Secret by any of the Defendants or Any Harm.................13

        3.    Plaintiff Has Not Plausibly Alleged Harm or Damages Caused by Any Misappropriation, Confirming the Speculative Nature of Its Claim.................19

    C.    Plaintiff Has Not Plausibly Stated a Common Law Misappropriation Claim.................20

    D.    Plaintiff Has Not Plausibly Alleged a Violation of the Anti-Hacking Act............20

II.   This Court Must Dismiss Plaintiff's Contract Claims Against Defendants .....................23

    A.    The Handbook Is Not a Contract, as a Matter of Law .............................23

    B.    Plaintiff Has Not Plausibly Alleged Damages Caused by Any Breach................26

    C.    Saje Did Not Exist at the Time of the Alleged Breach, Sucharski Cannot Induce Himself to Breach His Own Contract .......................................26

III.  The Court Must Dismiss Plaintiff's Entire Breach of Fiduciary Duty Claim...................26

IV.   The Court Must Dismiss Plaintiff's Unjust Enrichment "Claim." ...................27

V.    The Court Must Dismiss All Claims against Mrs. Sucharski ...........................27

CONCLUSION..........................................................................................................................27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acteon, Inc. v. Harms,*
  Case No. 20-14851, 2020 WL 6694411 (D.N.J. Nov. 6, 2011) ...............................................17

*ALA, Inc. v. CCAIR, Inc.,*
  29 F.3d 855 (3d Cir. 1994).....................................................................................................8

*Allen v. Bloomingdale's, Inc.,*
  225 F.Supp.3d 254 (D.N.J. 2016) .........................................................................................25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................7, 8, 10

*Atochem N. Am., Inc. v. Gibbon,*
  Case. No. 91-1201, 1991 WL 160939 (D.N.J. Aug. 15, 1991) .......................................17, 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................................7, 10

*Bramshill Invs., LLC v. Pullen,*
  Case No. 19-18288, 2020 WL 4581827 (D.N.J. Aug. 10, 2020) ...........................................21

*Fishkin v. Susquehanna Partners, G.P.,*
  563 F. Supp. 2d 547 (E.D. Pa. 2008) ....................................................................................26

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009)....................................................................................................8

*Fregara v. Jet Aviation Business Jets,*
  764 F. Supp. 940 (D.N.J. 1991) ............................................................................................26

*Goldsmith v. Camden Cnty. Surrogate's Office,*
  975 A.2d 459 (N.J. Super. Ct. App. Div. 2009)....................................................................27

*Herley Indus. v. R Cubed Eng'g. LLC,*
  Case No. 5:20-cv-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021)....................................14

*In re Burlington Coat Factory Sec. Lit.,*
  114 F.3d 1410 (3d Cir. 1997).......................................................................................3, 4, 6, 8

*Kopp v. United Technologies, Inc.,*
  539 A.2d 309 (N.J. Super. Ct. App. Div. 1988)....................................................................26

*Lard-VID, LLC v. Ground Support Labs, LLC,*
   2021 N.J. Super.................................................................................................. *passim*

*Mallet & Co. v. Lacayo,*
   16 F.4th 364 (3d Cir. 2021) .....................................................................11, 13, 15, 16

*McDermott v. Clondalkin Grp., Inc.,*
   649 F. App'x 263 (3d Cir. 2016) ........................................................................14

*Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council,*
   964 F.3d 218 (3d Cir. 2020)................................................................................23

*Morse v. Lower Merion Sch. Dist.,*
   132 F.3d 902 (3d Cir. 1997).................................................................................8

*Nat'l Reprographics, Inc. v. Strom,*
   621 F. Supp.2d 204 (D.N.J. 2009) .....................................................................17

*Nicosia v. Wakefern,*
   643 A.2d 554 (N.J. 1994)...................................................................................24

*Nostrame v. Santiago,*
   61 A.3d 893 (N.J. 2013)......................................................................................23

*Oakwood Labs. LLC v. Thanoo,*
   999 F.3d 892 (3d Cir. 2021)......................................................................11, 13, 15, 16

*Oakwood Labs., LLC v. Thanoo,*
   Case No. 17-cv-05090, 2018 WL 2973384 (D.N.J. June 12, 2018)......................14

*On Location, Inc. v. Popovich,*
   Case No. 22-00893, 2023 WL 2674843 (D.N.J. Mar. 29, 2023)...........................10

*Santiago v. Warminster Twp.,*
   629 F.3d 121 (3d Cir. 2010)................................................................................8

*Spencer Sav. Bank SLA v. McGrover,*
   Case No. 1899-13T3, 2015 WL 966151 (N.J. Super. Ct. App. Div. Mar. 15,
   2015). ...........................................................................................................21, 22

*Sunbelt Rentals v. Love,*
   No. 20-17611, 2021 WL 82370 (D.N.J. Jan. 11, 2021)...........................................17

*Witkowski v. Thomas J. Lipton, Inc.,*
   136 N.J. 385 (1994) ...........................................................................................24

*Woolley v. Hoffmann-La Roche, Inc.,*
   99 N.J. 284 (1985) ........................................................................................24, 25

4

**Statutes**

29 C.F.R. 1979 .......................................................................................................5

Defend Trade Secrets Act of 2016 ....................................................................... *passim*

New Jersey Computer Related Offenses Act ...............................................9, 20, 21, 22

New Jersey Trade Secrets Act ....................................................................9, 10, 19, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 7

## **INTRODUCTION**

Plaintiff, Ho-Ho-Kus, Inc. ("HHK") is concerned that former employee Steven Sucharski, his wife (Janeen Sucharski), and their self-funded startup (Saje Aerospace, Inc.) ("Defendants") may one day compete with it.  But, as is clear from the Complaint and as HHK has conceded, Sucharski does not have a non-compete or non-solicitation agreement. Because there is no enforceable contractual restriction on his activities, HHK resorts to claims based on a misappropriation theory premised entirely on a speculative allegation about the pace of the development of the new business (about which it has no actual knowledge) and its suspicion "upon information and belief" that Sucharski could have transferred to himself "all" data stored locally on a laptop he returned the same day of his termination.

HHK makes this speculative claim in the face of written assurances and certifications from Sucharski just hours before he was termination that "**I do not have any copies of Ho-Ho-Kus, Inc. blueprints or drawings (or similar documents) in hard copy form nor do I have any in electronic form outside my workspace and that I will not retain/take any such documents with me in the event that I leave for any reason**."  HHK also criticizes Sucharski's resetting of his HHK laptop even though HHK's own documents directed him to "return *or destroy*" all data in his possession.  HHK also omits from its Complaint the fact that, months before his termination and after he was reassigned to a different entity (and completely separate business), Sucharski transferred his HHK desktop computer to his New Jersey-based successor at HHK, transferred all the data related to his previous position to that New Jersey-based successor, to his Virginia-based successor, and to other HHK employees, and left all of his hard copy files with them, in his assigned offices, or on HHK's server.

There is simply no plausible allegation let alone proof Sucharski misappropriated or threatens to misappropriate anything.  There is only evidence he has not done so.  Where, as here,

1

there is no covenant restricting future employment, courts must be wary of a former employer's suppression of competition through claims and requests for injunctive relief that serve as *de facto*, back-door non-competes for which there was never any consideration or meeting of the minds.

For these reasons and those set out more fully below, the Court should grant Defendants' Motion and dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6).

## FACTUAL BACKGROUND

## I.    THE PARTIES

HHK is a New Jersey corporation headquartered in Paterson that manufactures fasteners based upon its commercial and government/military aerospace customers' designs and specifications, including "proprietary prints and models" **from customers** "describing their needs and requirements for a particular component." (Compl. (Dkt. No. 1) at ¶¶ 3, 10-13.)

Plaintiff alleges that Steven Sucharski joined HHK in 2009 and served in a variety of positions up until his removal as President on July 6, 2022.  In his role as President, Plaintiff alleges that Sucharski "acquired knowledge of and gained access to" "confidential, proprietary and trade secret information related to its business, including customer lists; pricing information; marketing materials and methods; pricing models; sales data and projections," which Plaintiff refers to in the Complaint as "Protected Information."  (Compl. at ¶¶ 14, 23.)  On July 6, 2022, Sucharski was reassigned to a different entity and entirely different business (initially STA Air LLC in Fair Lawn and the following week to Aeginas Air LLC). (*Id.* at ¶¶ 4, 22.) On November 18, 2022, Sucharski was terminated "effectively immediately" and without advanced notice through a letter delivered to him at approximately 6:00 A.M. on November 18, 2022 but dated the day before. (*Id.*)

Janeen Sucharski, Sucharski's wife, has no current or past affiliation with HHK.

The Sucharskis founded Saje Aerospace, Inc. on November 23, 2022 in Connecticut, where Saje's only physical office space is located. (Compl. at ¶¶ 4-6, 35.)

## II.    SUCHARSKI HAS NO CONTRACTUAL OBLIGATIONS TO HHK.

In connection with his employment at HHK, Sucharski was subject to a Handbook.  While that Handbook "notifi[ed] employees of their confidentiality obligations," (*id.* at ¶ 50), at no time during his employment with HHK (or STA Air LLC) did Sucharski sign an employment agreement or any other agreement containing any restrictions on his activities following the termination of his employment. Plaintiff nevertheless relies upon that Handbook to assert contract claims.[1]

In relevant part, the Handbook advised HHK employees that they were employees at-will, that "neither the employee nor [HHK] have entered into any contract of employment for a definite term, express or implied," and that HHK "is free to conclude the employment relationship at any time, with or without cause, and with or without notice." (Dkt. No. 3-7 at Ex. 1 ("Handbook"), § 1.) The Handbook also informed employees that its policies were "subject to change with or without notice." (*Id.*)  Plaintiff relies upon the following provision in the Handbook:

> …employees may not disclose any trade secrets or confidential information. Employees who are exposed to confidential, sensitive, or proprietary information about [HHK], its clients or its programs *may be required to sign a trade secret and nondisclosure agreement as a condition of employment*. Employees who improperly disclose any sensitive information, confidential information, or trade secrets are *subject to disciplinary action up to and possibly including discharge*, whether or not they are parties to such an agreement.

(*Id.* at § 5 (emphasis added); Compl. at ¶ 17.) The Handbook provides that conduct inconsistent with the policy "may lead to disciplinary action up to and including termination." (*Id.*)

## III.    HHK DEMANDS SUCHARSKI SIGN AN INDEMNIFICATION AGREEMENT AND TERMINATES HIS EMPLOYMENT

In November 2022—**16[2] years into his employment and after his reassignment to STA Air LLC / Aeginas Air LLC**—HHK demanded Sucharski sign an unusual agreement referenced

---

[1] Although not attached to the Complaint, the Court may consider the Handbook. *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997).
[2] Sucharski joined HHK on July 5, 2006 (not 2009, as in the Complaint). (Sucharski Decl. at ¶ 16.)

in Paragraph 29 of the Complaint but not attached to it.[3]  (Decl. of Steven Sucharski ("Sucharski Decl.") at Ex. 1 ("Indemnification Agreement").) The Indemnification Agreement specified at the outset that it served to address concerns **originating from HHK's customers**' "legal departments that [HHK] may be held legally responsible for any Intellectual Property **of theirs**, notably **their blueprints**, and **any misuse of that property which may result from our custody of those blueprints and other proprietary information**." (*Id.* (emphasis added).)

Despite that stated purpose, the definition of "IP"  in the Indemnification Agreement was extremely broad and indeterminate in that it purported to  include "many or all blueprints and other proprietary intellectual property owned and [sic] by Ho-Ho-Kus, Inc. or held by same on behalf of other business entities with whom Ho-Ho-Kus, Inc. has contractually defined business relationships (hereafter, the 'IP')." (*Id.*) The Indemnification Agreement did not define what "other proprietary intellectual property" meant and appeared to imply that HHK's customers' information was HHK's information. (*Id.*) The Indemnification Agreement also sought an indemnity that was not limited to claims brought against HHK by an HHK customer, again appearing at odds with the stated purpose of the Indemnification Agreement:

> I agree to fully indemnify Ho-Ho-Kus, Inc. for any and all legal costs and fees that Ho-Ho-Kus, Inc. may incur in association with my intentional use of this IP outside the scope of my employment here under any circumstance that is not authorized in writing prior to the use by a lawful representative of Ho-Ho-Kus, Inc.

(*Id.*)   To be clear as to how oppressive this IP Agreement was on its face, that indemnity meant an employee would have to indemnify HHK for legal costs for whatever the company subjectively views as being within the indeterminate definition of "other propriety intellectual property."

The Indemnification Agreement also required each signatory to certify that he did not have

---

[3] Plaintiff relies upon the Indemnification Agreement. (*See* Compl. at ¶ 29; *see also* n. 1.)

"personal possession" or "control" of any "IP" other than within the signatory's "workspace and/or computer systems that are the property of Ho-Ho-Kus, Inc." (*Id.*) And it separately specified that each signatory was to "**return _or destroy_ any and all such IP to which I have or have had access within 48 hours of the termination of my tenure at Ho-Ho-Kus, Inc., regardless of the circumstances of that termination**." (*Id.* (emphasis added).)

On its face, the Indemnification Agreement does not comply with the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831, *et seq.*, which expressly provides: "An employer **shall** provide notice of immunity set forth in the subsection in any contract or agreement with an employee that governs the use of a trade secret or other confidential information." 18 U.S.C. § 1833(b)(3)(A) (emphasis added). The Indemnification Agreement omitted that notice and was, therefore, not compliant with the DTSA. To make matters worse, Section 1833(b)(3)(C) of the DTSA provides that an employer may not be awarded attorney's fees if the notice is omitted, yet the Indemnification Agreement tries to do just that, imposing an indemnification obligation for HHK's "legal costs and fees" without having included the required statutory notice of immunity.[4]

The foundation of HHK's speculative claim of misappropriation is its blatant misrepresentation to the Court that Sucharski "refused to sign" that agreement, (Compl. at ¶ 30), seeking to create a negative inference. However, at the time he was presented with the Indemnification Agreement, Sucharski had been removed as President of HHK and demoted and reassigned to STA Air LLC in the aftermath of an internal audit and then again to Aeginas Air LLC. (Compl. at ¶ 4.) As HHK knows, **Sucharski did not refuse to sign**. To the contrary, he said:

I have connected with counsel to take advice on the acknowledgement document.

---

[4] This notice of immunity is particularly critical given that aircraft parts manufacturers such as HHK are heavily regulated by the government and since Sucharski was aware of issues related to the June 2022 recertification audit, for which he was retaliated against. *See, e.g.*, 29 C.F.R. 1979.

He said he would review promptly. I may put you in direct contact with him. In the meantime, ***I reiterate my assurance and certify that I do not have any copies of Ho-Ho-Kus, Inc. blueprints or drawings (or similar documents) in hard copy form nor do I have any in electronic form outside my workspace and that I will not retain/take any such documents with me in the event that I leave for any reason.*** I or my lawyer will be back in touch in short order.

(Sucharski Decl. at ¶ 54).)[5]  In retaliation, and despite those written assurances, HHK terminated Sucharski hours later. (*See* Dkt. No. 3-9 ("Termination Letter"); Compl. at ¶¶ 31-32.)

Sucharski "reset" his HHK laptop to factory settings, consistent with the provision in the Indemnification Agreement and historical practice at HHK, and he then made arrangements with his NJ-based successor (Mladjenovic) to return his keys and laptop, with his then-active desktop already at the Fair Lawn office Sucharski had been using for STA Air LLC / Aeginas Air LLC and with his former desktop from HHK having long been in the possession of his NJ-based successor at HHK following his removal as President. (Compl. at ¶ 43.) That same day, HHK transmitted "another letter" to Sucharski, (Compl. at ¶ 33), referring Sucharski to matters of "confidentiality" and HHK information and again advising Sucharski, as stated in the Indemnification Agreement, to "return ***or destroy***" HHK data and information "because its unauthorized use may subject you to criminal in addition to civil prosecution." (Dkt. No. 3-10 at Ex. 4 (emphasis added).)

## IV.    ESTABLISHMENT AND OPERATION OF SAJE AFTER SUCHARSKI'S TERMINATION

On November 23, 2022, *after* Sucharski was terminated from his position at HHK, the Sucharskis filed a Certificate of Formation for Saje with the Connecticut Secretary of State. (*See* Compl. at ¶ 35.) The Sucharskis also created a website portraying Saje's future business plans and secured office space in Connecticut. (*Id.* at ¶¶ 36-39.)

## V.    SPECULATIVE ALLEGATIONS OF WRONGDOING AND HARM

Plaintiff's Complaint offers the following speculative, conclusory allegations of

---

[5] Having relied upon and characterized the communication, this Court may consider it.  *See* n. 1.

wrongdoing associated with Saje's formation and Defendants' conduct:[6]

> "*Upon information and belief*, Saje could not have opened an office, acquired a manufacturing facility, rented a sales office, purchased highly specialized and expensive manufacturing equipment, hired manufacturing workers and purportedly developed the capacity to manufacture the Products within days of being terminated without significant advance planning, fundraising and organization and without misappropriating HHK's Protected Information."  (Compl. at ¶ 39 (emphasis added).)

> "Moreover, by creating a competing company engaged in virtually the same manufacturing and sales activities as HHK, *it is inevitable* that Sucharski will necessarily use and disclose HHK's Protected Information for his own personal gain and to create an unfair competitive advantage for Saje."  (Compl at ¶ 40 (emphasis added).)

> "*Upon information and belief*, Sucharski downloaded and transferred to himself all of the data located on the laptop before performing the factory reset and is currently using such information to design and manufacture the Products for his new company, to gain an undeserved competitive advantage and to solicit business from HHK's existing customers."  (Compl. at ¶ 46 (emphasis added).)

Plaintiff does not allege any actual retention, acquisition, use, or disclosure of either its own "Protected Information" or any information belonging to an HHK customer, nor does Plaintiff allege any actual harm, whether it be a loss of revenue or lost customers associated with the speculative conduct alleged.  Plaintiff does not even identify the specific information at issue.

## **ARGUMENT**

To withstand dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine the sufficiency of claims, a court must (1) review the elements of each claim, (2) identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth," and (3) determine whether any remaining well-pleaded factual

---

[6] Elsewhere, HHK attempts to create an air of plausibility with allegations emanating from those key allegations but masking reference to the terms "upon information and belief" and "inevitable."

allegations, assumed to be true, "plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. 662). Simply put, "[a]fter *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

In applying this rigorous standard, the Court is not required to credit "unwarranted deductions" of fact or "sweeping legal conclusions cast in the form of factual allegations," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997), and the Court may also consider documents "integral to or explicitly relied upon in the complaint" even where the plaintiff has neglected to attach those documents to the complaint. *See Burlington*, 114 F.3d at 1426. And to the extent an integral or referenced document contradicts an allegation in the complaint, the terms of the document, not the allegation, control and must be credited by a court in deciding a motion to dismiss. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

Plaintiff has not met and cannot meet this basic standard, as set out more fully below.

## I.    THE COURT MUST DISMISS ALL CLAIMS AGAINST PREDICATED UPON PLAINTIFF'S SPECULATIVE, CONCLUSORY ALLEGATION OF MISAPPROPRIATION.

With no viable contract upon which to assert claims against Defendants and with which to secure injunctive relief, Plaintiff desperately resorts to an entirely speculative allegation that Sucharski took HHK information from a company laptop the same day he was terminated and when he was outside of the office and not even connected to any HHK system:

> ***Upon information and belief***, Sucharski downloaded and transferred to himself all of the data located on the laptop before performing the factory reset and is currently using such information to design and manufacture the Products for his new company, to gain an undeserved competitive advantage and to solicit business from HHK's existing customers.

(Compl. at ¶ 46 (emphasis added).) That singular allegation serves as the non-existent foundation

8

for the following statutory and common law claims against Defendants: (i) violation of the DTSA (Count I);[7] (ii) violation of the New Jersey Trade Secrets Act ("NJTSA") (Count II); (iii) misappropriation under "common law" (Count III); (iv) breach of fiduciary duty under New Jersey common law (Count VI); "unjust enrichment" (Count VII); and (v) violation of the New Jersey Computer Related Offenses Act ("Anti-Hacking Statute") (Count VIII).

Plaintiff has not plausibly alleged and cannot plausibly allege any of those claims.

### A.    No Claim of Misappropriation "Upon Information and Belief" Is Plausible.

There is no plausible allegation, let alone proof, that Sucharski misappropriated anything, and caselaw generally confirms that a plaintiff cannot rely upon a theory of "inevitable disclosure" or "threatened" misappropriation absent a parallel contractual obligation restricting post-employment in a competitive position or well-pleaded allegations establishing acts of illicit taking, downloading, copying, transmission, or use of trade secret information.

Furthermore, Plaintiff's speculative allegation is contrary to the following critical facts:

- Sucharski's HHK desktop computer was given to his NJ-based successor months before, as Nepola and Roberts demanded.

- Sucharski certified that he had no HHK information in his personal possession and that he would not take or retain any such information upon termination, and the Indemnification Agreement in response to which he provided that certification directed employees to "return or destroy" information in their possession within 48 hours of termination, which is what Sucharski did.

- The day of his termination, Roberts sent another letter stating that Sucharski had the option to either "return or destroy" HHK information he had.

- Sucharski's new desktop remained, as it always had been, at his Fair Lawn office.

Those facts confirm Sucharski was not in possession of any HHK information after his termination, just as he certified to HHK in writing on November 17, 2022 hours before his termination:

*I...reiterate my assurance and certify that I do not have any copies of Ho-Ho-*

---

[7] Plaintiff's DTSA claim is the only basis pleaded for subject matter jurisdiction in this Court.

> ***Kus, Inc.** blueprints or drawings (or similar documents) in hard copy form nor do I have any in electronic form outside my workspace and that I will not retain/take any such documents with me in the event that I leave for any reason.*

(Sucharski Decl. at ¶ 54 (emphasis added).)  Those facts also confirm Sucharski either returned or deleted all such information—which is the opposite of taking it.

Simply put, Sucharski remains free of any contractual obligation restricting his activities, whether or not competitive with HHK, and no speculative allegation can be asserted to evade the strict pleading requirements for trade secret claims in this context. Counts I-III and VI-VIII of Plaintiff's Complaint must be dismissed on that basis alone. As set out below, those claims also must be dismissed because Plaintiff has not plausibly stated facts establishing the claims' elements.

**B.    Plaintiff Has Not Plausibly Established the Elements of a Claim for Statutory Misappropriation of Trade Secrets under the DTSA or NJTSA.**

To state a claim for a violation of either the DTSA or the NJTSA, a plaintiff must demonstrate: "(1) **the existence of a trade secret**, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the **knowing improper acquisition and use or disclosure of the secret**." *On Location, Inc. v. Popovich*, Case No. 22-00893, 2023 WL 2674843, at *3 (D.N.J. Mar. 29, 2023). Plaintiff has failed to allege those foundational elements and cannot do so. Indeed, Plaintiff has not identified any trade secret at all, let alone that the unspecified trade secret belongs to HHK (as opposed to a customer) or that Plaintiff has taken steps to protect the particular trade secret. Nor has Plaintiff alleged any "knowing improper" acquisition, use or disclosure of the unspecified trade secret or any harm. Plaintiff's conclusory allegation that Sucharski "upon information and belief…downloaded and transferred to himself all of the data located on the laptop" does not satisfy this Circuit's pleading requirements and is the very type of "conclusory" allegation rejected in *Twombly* and *Iqbal*. Those flaws each warrant dismissal.

1.       **Plaintiff Has Not Pleaded the Existence of a Protectable Trade Secret.**

In the context of a trade secrets claim, the Third Circuit mandates that (i) "the information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it"; and (ii) "the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906-13 (3d Cir. 2021). This requirement takes on great significance where, as here, a plaintiff seeks injunctive relief based upon such conclusory allegations of misappropriation because courts "cannot evaluate whether a plaintiff is likely to succeed on any element of a trade secret misappropriation claim until the plaintiff has sufficiently described those trade secrets." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 381-82 (3d Cir. 2021).

Plaintiff's misappropriation allegations in the Complaint fail to meet that burden and stand in stark contrast to the highly specific allegations in cases such as *Oakwood*, in which the plaintiff identified the following specific trade secrets pertaining to its "microsphere system for drug delivery" for peptide-based drugs: the information laying out its design, research and development, test methods and results, manufacturing processes, quality assurance, marketing strategies, and regulatory compliance for that development and the variables that affect the development of those microsphere products—the data, peptide-specific release profiles and other discoveries associated with those variables obtained through "extensive trial and error testing." 999 F.3d at 907. Here, by contrast, Plaintiff's Complaint lists only generic categories of information to which Sucharski would have had access at some point during his 16 years working for HHK. Plaintiff references Manufacturing Plans developed in response to customer information and requirements, but does

not, except in conclusory fashion, identify any elements which are either not belonging to the customer or not available through standard specifications or reverse engineering, and Plaintiff fails to identify any Manufacturing Plan that belongs to it which has been taken and which is being used or disclosed by Defendants. Plaintiff also identifies other broad categories, including customer lists; pricing information; marketing materials and methods; pricing models; sales data and projections and in conclusory fashion alleges they are trade secrets information, but without identifying anything specific Defendants have taken and used or disclosed. (Compl. at ¶¶ 12, 14.) These threadbare allegations are not tied to any time period, customer, or specific product grouping. They are not tied to any specific files acquired by Sucharski or stored by him remotely on his HHK laptop. They are not tied to any actual product Saje is making or planning to make. Without such facts, there is no basis for the Court with a basis to assess the allegations' plausibility.

These pleading omissions take on particular significance in the context of this matter. Here, Plaintiff acknowledges that Sucharski was "removed" as HHK's President in July 2022, and he then transitioned responsibilities along with his desktop computer and files to his successors and other relevant HHK employees.  Sucharski was, as of July 6, 2022, reassigned to an entirely different company (and later another company), where he supported a distinct business and product base. Specificity is also important given that such information (and the information of HHK customers) was typically stored on protected areas of HHK's server/systems not accessible to employees unless they are connected to HHK's server—something that is not even possible for individuals not connected to HHK's systems in the office. Again, Plaintiff's allegation is that Sucharski engaged in misappropriation the day of his termination, immediately after he was fired, and when he was not even connected to HHK's systems and had just hours earlier certified that he had no information in personal possession and would not retain or take any upon termination.

The lack of specificity in Plaintiff's allegations is also significant because it fails to distinguish information known to Sucharski given his breadth of experience as a Princeton-educated aerospace and mechanical engineer. Plaintiff's allegations also do not account for the indisputable fact that HHK's business consists primarily of production of (i) OEM Standard products designed by customers (not by HHK) or in accordance with OEM-derived envelope requirements (not HHK requirements); (ii) products based upon publicly available specifications and industry standards;[8] and (iii) products that were simply reverse engineered from another company's product. These particular omissions are critical because the Third Circuit has cautioned that, "[w]hen the breadth of a trade secret description is so far-reaching that it includes publicly available information [] and admitted industry knowledge, that information is not specific enough to be accorded trade secret status." *Mallet*, 16 F.4th at 384 (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 689 (N.D. Ga. 2007)); *see also Oakwood*, 999 F.3d at 906.

For those reasons, Plaintiff's claims for statutory misappropriation should be dismissed.

### 2.    Plaintiff Has Not Pleaded any Knowing Improper Acquisition, Use, or Disclosure of a Trade Secret by any of the Defendants or Any Harm.

Even if the generic "Protected Information" vaguely referred to in the Complaint were sufficiently specific to identify the trade secrets at issue and state a plausible claim—which it is not—and even if the information belonged to HHK (as opposed to its customers), HHK has not and cannot plausibly plead that Defendants improperly acquired, used, or disclosed such any of it.

Courts within the Third Circuit and in New Jersey have appropriately found that, where a plaintiff alleges nothing more than general allegations of acquisition, use, or disclosure of alleged

---

[8] For instance, standards and specs can be purchased at https://www.sae.org/standards or AIA at https://global.ihs.com/doc_detail.cfm?document_name=NAS77&item_s_key=00079873, and military specifications are available at no cost at http://everyspec.com/MS-Specs/MS1/MS14000-MS14999/MS14238A_15006/ and http://everyspec.com/MIL-SPECS/MIL-SPECS-MIL-DTL/MIL-DTL-85052B_5309/.

trade secrets, it has not stated a claim and cannot withstand challenge on a motion to dismiss. *See e.g.*, *Lard-VID, LLC v. Ground Support Labs, LLC*, Case No. BER-L-5929-20, 2021 WL 2396576, at *7 (N.J. Super. Ct. Feb. 26, 2021) (dismissing compliant that "does not allege any actual instances of Defendants using any trade secrets to Plaintiff's detriment"); *Oakwood Labs., LLC v. Thanoo*, Case No. 17-cv-05090, 2018 WL 2973384, at *6 (D.N.J. June 12, 2018) (plaintiff's failure to plead facts about how the trade secrets at issue were actually used by the defendants insufficient); *Herley Indus. v. R Cubed Eng'g., LLC*, Case No. 5:20-cv-02888, 2021 WL 229322, at *7 (E.D. Pa. Jan. 22, 2021) (general allegations that the defendant "is improperly usurping [plaintiff's] IP to further its own interest and try to meet its [contractual] obligations" was insufficient). The same is true here because HHK has not plausibly alleged Defendants "acquired," "used" or "disclosed" **any** alleged trade secret in connection with resetting the laptop or otherwise.

As a threshold matter, Plaintiff relies entirely on one allegation made "upon information and belief" that Sucharski downloaded and transferred to himself "all of the data on the laptop." (Compl. at ¶ 46.) Defendants have already explained why that speculative allegation cannot be credited to the contradiction of the other facts alleged in the Complaint and in the documents referenced in it. But the fundamental problem is not only that the allegation is made "upon information and belief" but that it is the **only** allegation made, and it is "boilerplate and conclusory" with no other "factual allegations that make [any] theoretically viable claim plausible." *McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). These defects are fatal for multiple reasons.

First, Plaintiff's allegations do not address what specific information Sucharski allegedly took from his HHK laptop and how, how any information was used or disclosed.

Second, Plaintiff does not allege any other suspicious activity such as, for instance, unusual

downloading activity from HHK databases or portals, the transmission of files or data from Sucharski's HHK email account to his or to a third party's outside email account or cloud account. That is information Plaintiff would have in its possession, regardless of whether Sucharski reset the laptop since HHK's emails and any monitoring programs for the company's databases and systems would reside entirely outside of the laptop. Plaintiff's failure to plead such suspicious activity is telling and renders its contrary allegations all the more implausible.

Third, Plaintiff's allegation only speculates about Sucharski's conduct and pleads nothing as to whether and how Mrs. Sucharski or Saje acquired anything. In fact, the Complaint alleges no facts at all about Mrs. Sucharski. As to Saje, Plaintiff appears to attempt to establish liability through imputation and not by pleading any specific conduct by an agent of other than Sucharski, and Plaintiff only alleges conduct on November 18, 2022—before Saje even existed.

To permit Plaintiff to rely upon that singular conclusory allegation made entirely upon information and belief without any contextual allegations to support that speculation would render the applicable pleading standard meaningless and would contravene Third Circuit precedent for misappropriation claims. A review of the far more specific allegations in *Oakwood*, *Mallet* and *Lard-VID*, *supra*, illustrates the insufficiency of Plaintiff's identification of the supposed trade secrets and how those particular trade secrets were unlawfully acquired, used, or disclosed here.

In *Mallet*, for instance, the Third Circuit recognized that the plaintiff former employer had specifically alleged that the former employee sent actual screenshots of scientific formulas and a spreadsheet of technical data and research to her personal email account and copied 1,748 files onto a USB drive while still employed and days before her interview with a company, where she would be competing directly with the former employer in a highly technical sector of the baking chemicals industry in which that company had no prior experience. *Mallet*, 16 F.4th at 374.

15

But even then, the Third Circuit held that all of those allegations—while they sounded nefarious—did not establish the bedrock requirement that a plaintiff identify trade secrets "with sufficient particularity" and were not adequate for a court to order broad injunctive relief. *Id.* at 374, 383 & n.23 (discussing and quoting *Oakwood*, 999 F.3d at 906, 908, 911-12). And in *Lard-VID*, the New Jersey state court found the allegations of "use" to be insufficient, even where the plaintiff had alleged that the defendants emailed plaintiff-owned data to themselves and had interfered with and converted one of the plaintiff's client relationships because, the court explained, the complaint did not allege **<u>what</u>** specific data was taken and **<u>how</u>** the defendants allegedly used that information to damage the plaintiffs. 2021 WL 2396576, at *7.

Rather than pleading facts plausibly alleging misappropriation in connection with Sucharski's laptop, Plaintiff appears to resort to allegations predicated upon a theory of "inevitable disclosure" or "threatened" use or disclosure. (*See* Compl. at ¶ 40.) But "inevitable disclosure" is not a theory of broad application and cannot be relied upon to displace or ignore the statutory elements of a trade secrets claim or as a substitute for this Circuit's pleading requirements for misappropriation claims. It is also not typically countenanced by courts absent one or more of the following facts not present here: (i) express contractual obligations; (ii) a secret-sauce scenario such as the formula for Pepsi products, the treasured process to ensure the perfect nooks and crannies in Thomas' English Muffins, or a highly complex chemical formula and production process; and (ii) specific allegations of alleged taking or use  such as downloading or transfers. In moving for injunctive relief, Plaintiff appears to suggest that there is some support under caselaw for its "threatened disclosure" allegations, but those cases confirm the insufficiency of Plaintiff's allegations in the Complaint and compel dismissal.

This is not a matter involving defendants with parallel contractual obligations supporting

injunctive relief or defendants who have engaged in specific conduct involving the copying, transfer, or unusual access to information. *See Sunbelt Rentals v. Love*, No. 20-17611, 2021 WL 82370, at *24 (D.N.J. Jan. 11, 2021) (defendant, bound by confidentiality, noncompete, and nonsolicitation agreement, admitted that he sent confidential information obtained from his company computer to his personal email address and to his brother before his resignation to join a competitor); *Acteon, Inc. v. Harms*, Case No. 20-14851, 2020 WL 6694411, at *9 (D.N.J. Nov. 6, 2011) (defendant, bound by confidentiality, noncompete agreement, emailed sensitive information regarding discrete project to his personal email address and to the CEO of his new employer); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp.2d 204, 224 (D.N.J. 2009) (defendant breached a 50-mile-radius noncompete by joining competitor printing business and was enjoined on that basis alone), *cited in* Dkt. No. 3-1 at pp. 14-15.  Indeed, Plaintiff alleges none of that here.

This is also not a matter involving the theft of secret-sauce information involving highly complex chemical formulations and processes. *See Atochem N. Am., Inc. v. Gibbon*, Case. No. 91-1201, 1991 WL 160939, at *7 (D.N.J. Aug. 15, 1991) (defendant had an employment agreement and confidentiality obligations, joined a competitor, and worked with an outside manufacturer for the plaintiff staffed by former employees, leading to the competitor's development of a copy-cat chemical compound and process), *cited in* Dkt. No. 3-1 at pp. 14-15. Plaintiff's motion attempts to align its allegations with the saga laid out in the court's detailed explanation of its award of permanent injunctive relief in *Atochem*, referring to the case as "instructive," but the case actually proves just how speculative and insufficient HHK's claims here are.

The *Atochem* case is a quintessential secret-sauce case that has no procedural or factual resemblance to HHK's allegations or to HHK's simplistic business as an outsourced manufacturer of parts designed by third-party customers and of me-too products reverse engineered from

existing products manufactured by other companies in the industry. Procedurally, *Atochem* involved a permanent injunction following discovery and testimony, including highly technical expert testimony and patent review.  Factually, the court found that the competitor had hired the plaintiff's former employee to help the competitor recreate an antimony triacetate (ATA) chemical composition used in textile applications, working together with one of plaintiff's outside manufacturers (who was itself staffed by former employees of the plaintiff with detailed knowledge of the trade secret product). *Atochem*, 1991 WL 160939 at *7. Through that strategy, the competitor quickly developed—**within hours**—a chemical and production process that mirrored the plaintiff's (and to which the former employee and production company had access and knowledge) and could only have been done with use of plaintiff's trade secret formula and production information to arrive at the process chosen by the competitor—without any pre-testing lab analysis—particularly, as the court found: "1) the weight ratio of charged toluene, 2) the addition rate of acetic anhydride, 3) one-hour reflux time, 4) cooling/crystallization temperature and 5) purification process," all of which aligned with the plaintiff's nonpublished processes and composition and were distinct from published patent processes by another company. One of the steps for the plaintiff's process stolen by the competitor was unique because of an aspect of the plaintiff's equipment and because plaintiff coincidentally changed its process in an unusual manner as a result of a production fire at another plant that the competitor would only have adopted if it was blindly copying the plaintiff's trade secret process! Plaintiff's claims here involve nothing technical, let alone allegations of that sort and do not state any plausible claim.

There is, simply put, no authority supporting the claims and relief Plaintiff seeks in the absence of contractual restrictive covenants and without any plausible allegation of actual taking and use of actual trade secret files and data, and the Court must dismiss Plaintiff's claims.

3.      **Plaintiff Has Not Plausibly Alleged Harm or Damages Caused by Any Misappropriation, Confirming the Speculative Nature of Its Claim.**

Plaintiff's misappropriation claims also fail because it has not alleged and cannot allege any specific harm or damages caused by any act of misappropriation. Plaintiff merely alleges:

> Defendants' misappropriation and destruction of HHK's confidential and trade secret information has caused significant damage to HHK, including but not limited to the loss business opportunities, customers and suppliers; damage to business reputation; lost sales; and the cost of an investigation into their unlawful conduct.

(Compl. at ¶ 57.) That conclusory statement is not supported by any factual allegation of lost business or diverted customers, and any allegation of such a loss would be entirely implausible.

The aerospace manufacturing industry is highly regulated and requires advanced accreditations that take a significant time to achieve before any product can even be sold and shipped to any customer within the production chain and that first requires an established facility with operational machinery, staff to run the machinery, and multi-stage audits, **none of which Plaintiff has alleged in the Complaint and none of which it can plausibly, let alone possibly, allege**.[9] Furthermore, Plaintiff would have to allege that Saje is selling the same products to the same customers in order to establish a loss, but Plaintiff has not alleged in its Complaint and cannot plausibly, let alone possibly, allege that Saje has developed and sold to the same customers the same products made by HHK.  Even then, HHK is not an exclusive supplier to any customer, as the customers purchase their OEM Standard products from multiple manufacturers. In short, the implausibility of any alleged harm further confirms the implausibility of Plaintiff's conclusory allegation of misappropriation made only "upon information and belief" and further warrants

---

[9] *See, e.g.,* https://en.wikipedia.org/wiki/AS9100; https://www.thecoresolution.com/as9100#:~:text=How%20Long%20Does%20It%20Take,based%20on%20your%20individual%20needs.

dismissal of Plaintiff's DTSA and NJTSA claims.

### C.    Plaintiff Has Not Plausibly Stated a Common Law Misappropriation Claim.

The NJTSA expressly preempts any contradictory common law, specifying in Section 9(b), "This act shall supersede conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." Consequently, while contract claims of any sort and common law claims for misappropriation or conversion of confidential or proprietary information or property may have survived enactment of the NJTSA because they do not involve information or property rising to the level of "trade secrets," the NJTSA preempted any alternative common law tort claim based on the misappropriation of trade secrets. Here, Plaintiff's claims for "misappropriation" under New Jersey "common law" (Count III) and "unjust enrichment" (Count VII) are predicated exclusively upon "trade secret" misappropriation and not some lesser category of information—not that Plaintiff has even identified the information at issue in the Complaint— as a result of which they must be dismissed in their entirety.[10] Count VI is likewise predicated mostly on allegations of trade secret misappropriation and such aspects of that claim must be dismissed for the same reason.[11]  Even were such claims not preempted under the NJTSA, they would fail for the same reasons as Plaintiff's claims under the DTSA and NJTSA, set out above.

### D.    Plaintiff Has Not Plausibly Alleged a Violation of the Anti-Hacking Act.

New Jersey's Anti-Hacking Act created a private right of action that requires the plaintiff to allege: (1) an actor took or damaged computer data **without authorization**, and (2) a plaintiff was "damaged in business or property" as a result of the prohibited conduct. *Lard-VID*, 2021 WL

---

[10] Plaintiff's "claim" for unjust enrichment also fails for the reason set out in Section IX, *infra*. That point—and the preemption of such a claim—are further supported by the NJTSA itself which provides, in Section 4(a), that "[d]amages can include both the actual loss caused by misappropriation ***and the unjust enrichment*** caused by misappropriation that is not taken into account in computing actual loss." (emphasis added).

[11] The remainder of its breach of fiduciary duty claim must be dismissed as set out in Section VIII.

2396576 at *6 (citing N.J.S.A. 2A:38A-3 ("A person or enterprise damaged in business or property as a result of any of the following actions may sue [for] ... [t]he purposeful or knowing, and unauthorized altering, damaging, taking, or destruction of any data")). Courts have held that conclusory or speculative allegations of business or property damage are insufficient to state a claim. *See Lard-VID*, 2021 WL 2396576, at *7; *Bramshill Invs., LLC v. Pullen*, No. 19-18288, 2020 WL 4581827, at *5 (D.N.J. Aug. 10, 2020) (citing *In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2014 WL 3012873, at *18 (D.N.J. July 2, 2014) (D.N.J. July 2, 2014) ("Without allegations demonstrating plausible damage to 'business or property,' [p]laintiffs cannot state a claim for relief under the [Act]")). Courts have also held that pleading damages in the form of "costs of investigation and attorney's fees" is not permissible. *Spencer Sav. Bank SLA v. McGrover*, Case No. 1899-13T3, 2015 WL 966151, at *7 (N.J. Super. Ct. App. Div. Mar. 15, 2015) ("The [Act] requires proof that a plaintiff was damaged in business or property as a result of the proscribed conduct. [Plaintiff] urges that public policy requires that we interpret this plainly-worded phrase expansively to include [its] costs of investigation and attorneys' fees as damage to its business. Bedrock principles of statutory construction preclude such an indulgence.").

The trial court's decision in *Lard-VID*, is, again, instructive. There, the plaintiffs alleged the defendants misappropriated funds and information by sending emails from their work email accounts to their personal email accounts right before their departure and by deleting data that allegedly belonged to the plaintiffs. 2021 WL 2396576, at *1. The defendants were not under a non-disclosure agreement or data access restriction agreement and used their own credentials, and the company had not withdrawn their authorization to access the information. Rather, the claim was based on a conclusory allegation that defendants "engaged in a pattern of destroying and taking [the plaintiffs'] data without authorization." *Id.* at *6. Further, the complaint failed to allege

how the defendants actually **<u>used</u>** the information allegedly taken. *Id.* The trial court therefore dismissed the plaintiff's Anti-Hacking Act claims, concluding that there was no allegation (1) that the defendants accessed any systems or data that they were not authorized to access as employees, (2) that the defendants engaged in any hacking, or (3) that the plaintiffs experienced any harm beyond "speculative future harm." *Id.*

Plaintiff's allegations against the Defendants in the Complaint are similar but actually weaker than the allegations rejected by the court in *Lard-VID*. The allegations in *Lard-VID* included allegations of actual taking information through transmission to personal email addresses as opposed to merely allegations of destroying information, and the allegations in Lard-VID did not include an express instruction given twice by management authorizing terminated employees to either "return **or destroy**" data, as set out in the Indemnification Agreement and IP Letter Sucharski received from HHK. Needless to say, any allegation of hacking predicated upon destruction of data cannot plausibly be made when Sucharski was authorized to use the laptop, used his credentials to do so, and where HHK authorized him to either "return or destroy" the data.

Furthermore, there is no plausible allegation of harm for the reasons set forth in Section VI.B.3, *supra*. In *Lard-VID*, 2021 WL 2396576, at *6, the court held that allegations of speculative future harm are insufficient to state a claim, and yet that is exactly what Plaintiff alleges here in pleading that "it is inevitable that [Mr.] Sucharski will necessarily use and disclose HHK's Protected Information for his own personal gain and to create an unfair competitive advantage for Saje" and causing "loss of business opportunities; damage to business reputation; lost sales; and the cost of an investigation into their unlawful conduct." (Compl. at ¶¶ 40, 100.) In addition, Plaintiff's "cost of an investigation into [] unlawful conduct" as alleged here, are not cognizable damages under the Anti-Hacking Act as a matter of law. *See Spencer*, 2015 WL 966151, at *7.

Finally, there is no plausible "loss" of information alleged because the HHK information resides on HHK's server, on the sales desktop computer Sucharski provided to his NJ-based successor (Mladjenovic) for his and HHK's use months earlier, in the numerous hard copy and electronic files Sucharski transferred to his NJ-based and VA-based successors (Mladjenovic and George) and other HHK employees and saved to HHK's systems, and in the hard copy files stored in Sucharski's former Paterson office (taken over by Mladjenovic) and in his Fair Lawn office.

Count VII of the Complaint must, therefore, be dismissed.

## II.    THIS COURT MUST DISMISS PLAINTIFF'S CONTRACT CLAIMS AGAINST DEFENDANTS.

The Complaint asserts two contract claims based upon the Handbook. The first, set out in Count IV is a claim for breach of contract against Sucharski, and the second is a claim for tortious interference with that "contract," filed against Saje alone. Both claims fail.

### A.    The Handbook Is Not a Contract, as a Matter of Law.

To state a claim for breach of contract, a plaintiff must establish: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020). The "elements of tortious interference with an existing contract" are (1) "intentionally and improperly interfer[ing] with the performance of a contract…between another and a third person by inducing or otherwise causing the third person not to perform the contract"; and (2) "pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Nostrame v. Santiago*, 61 A.3d 893, 901 (N.J. 2013) (citing RESTATEMENT (SECOND) OF TORTS § 766). Plaintiff has not pleaded and cannot plead either claim because the Handbook is not a contract, as a matter of law.

An employee handbook can constitute an enforceable contract only if: (1) there is no clear and prominent disclaimer that employment is at-will; and (2) the handbook leads a reasonable

employee to believe it creates a contractual obligation based on several factors, including the definiteness and comprehensiveness of the policy at issue and the context of the manual's preparation and distribution. *See, e.g.*, *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 298-302 (1985); *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 392-93 (1994). The New Jersey Supreme Court has held that an employee handbook disclaimer is clear if it states "[1] that there is ***no promise of any kind by the employer*** contained in the manual; [2] that regardless of what the manual says or provides, the employer promises nothing and ***remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement***; and [3] that the employer continues to have the ***absolute power to fire anyone with or without good cause***." *Nicosia v. Wakefern*, 643 A.2d 554, 560 (N.J. 1994) (emphasis added); *see also Woolley*, 491 A.2d at 1271. This Court applied these principles in *Theodossiou v. Commerce Bank, N.A.*, where the employer's handbook stated in bold lettering that "**[e]mployment with Commerce is terminable 'at-will' . . . Commerce has the absolute power . . . to terminate [the employee's] employment, at any time, for any reason or no reason, with or without notice.**" Case No. 06-4137 (JEI), 2007 WL 1071961, at *3 (D.N.J. April 5, 2007). In that case, the court found the handbook disclaimer precluded a finding that the handbook was a contract because the handbook made "no promise of any kind," the company retained the right to "change wages and all other working conditions without having to consult anyone and without anyone's agreement," and the company had "the absolute power to fire anyone with or without good cause." *Id.*

The Handbook at issue in Plaintiff's Complaint must be treated the same. It plainly states at the outset:

> Ho-Ho-Kus, Inc.'s policies, practices, and benefits will change from time to time. Consequently, Ho-Ho-Kus, Inc. reserves the right to revise, supplement, or rescind any provisions of the handbook, other than its employment-at-will provisions, without advance notice. Ho-Ho-Kus, Inc. is an at-will employer in the state of New

> Jersey. The employee and the employer reserve the right to terminate employment at any time, with or without cause, or advance notice.

(Handbook at § 0.) Those points are reiterated elsewhere in the Handbook, including in Section 1, which similarly states:

> It should be noted that neither the employee nor Ho-Ho-Kus, Inc have entered into any contract of employment for a definite term, express or implied. Employment with Ho-Ho-Kus, Inc. is voluntary and employees are free to resign at anytime. Similarly, Ho-Ho-Kus, Inc. is free to conclude the employment relationship at any time, with or without cause, and with or without notice. The relationship between the employee and Ho-Ho-Kus, Inc. is at-will. While the other policies in this handbook are subject to change with or without notice, the at-will relationship can be changed only by a written agreement expressly for that purpose, signed by the President.

(Handbook at § 1.) Those provisions make clear that HHK did not intend to create a contract between itself and its employees, including Sucharski, and HHK's right to amend the terms of the handbook unilaterally makes it impossible to establish the "meeting of the minds" required for every contract under New Jersey law. *Allen v. Bloomingdale's, Inc.*, 225 F.Supp.3d 254, 258 (D.N.J. 2016) ("must prove the existence of a contract by showing…a meeting of the minds").

The Handbook provisions at issue in the Complaint also specify that "[e]mployees who are exposed to confidential, sensitive, or proprietary information about Ho-Ho-Kus, Inc., its clients, or its programs may be required to sign a trade secret and nondisclosure agreement as a condition of employment," confirming that the policies are not themselves an agreement. (*Id.* at § 1, p. 11.) Furthermore, the policies set out in those sections pertain only to during-employment conduct because "[e]mployees who improperly disclose any sensitive information, confidential information, or trade secrets *are subject to disciplinary action up to and possibly including discharge*" only. (*Id.* (emphasis added).) Sucharski's employment had already been terminated at the time he is alleged to have violated the policies in the Handbook, so those policies do not even apply to the conduct at issue in the Complaint, and no "reasonable employee" would understand

them to be a contract or to apply post-employment. *See Woolley*, 99 N.J. at 298-302.

Because the Handbook is not a contract, Plaintiff has not stated and cannot state any claim for breach of contract or for tortious interference, and Counts IV and V must be dismissed.

### B.    Plaintiff Has Not Plausibly Alleged Damages Caused by Any Breach.

Plaintiff also cannot state any breach of contract or tortious interference claim against Sucharski or Saje because it has not plausibly alleged either a breach or damages, as set out above.

### C.    Saje Did Not Exist at the Time of the Alleged Breach, Sucharski Cannot Induce Himself to Breach His Own Contract.

Setting aside the fact that the Handbook is not a contract under New Jersey law, Plaintiff cannot state a claim against Saje for tortious interference with Sucharski's alleged obligations under the Handbook for two independent reasons. *First*, Plaintiff alleges that Sucharski violated the policies in the Handbook on November 18, 2022, immediately after his termination, but Saje did not even exist at that time. *Second*, and more fundamental, Sucharski could not possibly induce himself to breach a contract to which he is a party, and under New Jersey law, an action for tortious interference cannot be maintained where the claim is "not against a third party interloper who has interfered with the contractual relationship." *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940, 955 (D.N.J. 1991) (quoting *Sandler v. Lawn-A-Mat Chemical & Equipment Corp.*, 358 A.2d 805, 812 (N.J. Super. Ct. App. Div. 1976). "A party cannot be guilty of inducing the breach of its own contract." *Kopp v. United Technologies, Inc.*, 539 A.2d 309, 315 (N.J. Super. Ct. App. Div. 1988), *accord Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 587 (E.D. Pa. 2008).

Count V must be dismissed for these additional, independent reasons.

### III.    THE COURT MUST DISMISS PLAINTIFF'S ENTIRE BREACH OF FIDUCIARY DUTY CLAIM.

As set forth in Section VI.C, *supra*, Plaintiff's claim against Sucharski for breach of fiduciary duty based upon conduct constituting misappropriation of alleged trade secrets is

preempted and must be dismissed on that basis. The remainder of Plaintiff's claim for breach of fiduciary duty must be dismissed for the simple reason that the only actual conduct alleged in the Complaint took place after Sucharski's employment and fiduciary relationship ended.[12]

**IV.    THE COURT MUST DISMISS PLAINTIFF'S UNJUST ENRICHMENT "CLAIM."**

In Count VII, Plaintiff asserts a "claim" for "unjust enrichment." However, there is no such claim under New Jersey law in this context, where no "benefit" has been "conferred," and Plaintiff cannot employ the principle as a catchall "claim" to evade its obligations to plead the elements of viable misappropriation and contract claims. *Goldsmith v. Camden Cnty. Surrogate's Office*, 975 A.2d 459, 463 (N.J. Super. Ct. App. Div. 2009). Unjust enrichment is merely a remedy Plaintiff could theoretically plead and pursue for another claim in the absence of legal damages.

**V.    THE COURT MUST DISMISS ALL CLAIMS AGAINST MRS. SUCHARSKI.**

The Complaint alleges no facts at all about Mrs. Sucharski aside from identifying her (Compl. at ¶¶ 4-6), asserting that the Court possesses personal jurisdiction over her (*id.* at ¶ 8), and alleging that she and Sucharski started Saje in November 2022 (*id.* at ¶ 35). Counts I, II, III, and VII must, therefore, be dismissed as to Mrs. Sucharski.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims in the Complaint against them.

Dated:    April 10, 2023                    **BLANK ROME LLP**
                                            *A Pennsylvania LLP*

                                            */s/ Stephen M. Orlofsky*
                                            Stephen M. Orlofsky (NJ ID: 012431974)
                                            New Jersey Resident Partners
                                            Michael R. Darbee (NJ ID: 119682014)

---

[12] Plaintiff's allegation in Paragraph 39 speculating about other imagined conduct is entitled to no weight at all. As one example, Saje is not financed by any outside investor. Plaintiff cannot simply make up facts to fulfill its pleading obligations.

300 Carnegie Center, Suite 220
Princeton, New Jersey 08540
Tel.: 609-750-2646
Fax: 609-897-7286
stephen.orlofsky@blankrome.com
michael.darbee@BlankRome.com
*Attorneys for Defendants*

Anthony B. Haller, Esq. (*pro hac vice*)
Kevin M. Passerini, Esq.
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Fax: (215) 569-5555
Anthony.Haller@BlankRome.com
Kevin.Passerini@BlankRome.com

## **CERTIFICATE OF SERVICE**

I, Kevin M. Passerini, certify that a true and correct copy of the foregoing was filed and served on counsel of record by CM/ECF, this 10th day of April, 2023.

/s/ *Kevin M. Passerini*
KEVIN M. PASSERINI