**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HO-HO-KUS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN SUCHARSKI, JANEEN<br>SUCHARSKI, and SAJE AEROSPACE, INC.,<br><br>Defendant. | Case No. 2:23-cv-01677 (BRM) (JSA)<br><br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a motion (ECF No. 18) by Defendants Steven Sucharski ("Mr. Sucharski"), Janeen Sucharski ("Mrs. Sucharski") (together with Mr. Sucharski, the "Sucharskis"), and Saje Aerospace ("Saje") (together with the Sucharskis, "Defendants") to dismiss Plaintiff Ho-Ho-Kus's ("HHK") Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). HHK filed an opposition on April 17, 2023. (ECF No. 24.) Also before the Court is HHK's application for a Preliminary Injunction and Temporary Restraining Order. (ECF No. 3.) On March 24, 2023, this Court ordered Defendants to show cause why a preliminary injunction should not be issued. (ECF No. 6.) Defendants filed a response to the Order to Show Cause on April 10, 2023. (ECF No. 19.) HHK filed a reply to Defendants' response on April 17, 2023. (ECF No. 23.) Defendants filed a sur-reply to HHK's reply on April 28, 2023. (ECF No. 28.) Having reviewed the submissions filed in connection with the Motions and having held oral argument on

May 8, 2023,[1] for the reasons set forth below and for good cause having been shown, Defendants'
Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and HHK's application for
a Preliminary Injunction and Temporary Restraining Order is **DENIED**.

I.   BACKGROUND

   A.   **Factual Background**

      1.   **The Corporation and Its Business**

HHK is a New Jersey corporation founded in 1992. (ECF No. 1 ¶¶ 8, 10.) The company
designs and manufactures high precision parts and components for the commercial and military
aerospace industries, including latches, fasteners, and clamps (the "Products"). (*Id.*) Customers
such as aircraft manufacturers and aerospace companies send detailed proprietary prints and
models to the company for the design of components. (*Id.* ¶ 11.)

Based on information from the customer, HHK develops a unique design and
manufacturing plan (*id.* ¶ 13), which includes the following proprietary elements:

> • Manufacturing Blueprints: detailed description of the precise
> manner and method by which the component will be designed and
> manufactured. The Manufacturing Blueprints contain highly
> specific and technical information, including heat tolerance levels,
> load requirements.
> • Third-Party Manufacturing Blueprints: in some instances, the
> customer creates the manufacturing blueprint, which it provides to
> HHK to execute the manufacturing of the component. These
> blueprints are confidential and proprietary and entrusted to HHK,
> which must maintain their secrecy.
> • Sales Blueprints: set forth the fit, form and function of a
> component and provided to customers.
> • Work Order/Processing Specifications: step-by-step instructions
> for how to make the component.
> • Material Specifications: define required materials for specific
> components.

---

[1] The parties held status conferences on March 29, 2023 (ECF No. 14) and June 20, 2023. (ECF
No. 35.) The parties held settlement conferences before Magistrate Judge Jessica S. Allen on
July 11, 2023 (ECF No. 36) and August 30, 2023. (ECF No. 37.)

> • Computer Numerical Control Programming: complex computer
> programs developed by HHK that control how complex
> manufacturing machinery will cut metal for different Products
> according to the Manufacturing Blueprints.
> • Proprietary tools: complex machine tools developed by HHK for
> metal stamping and other manufacturing actions.
> • Inspection Reports: detailed listing of complications in the
> manufacturing process that is used to determine what and how to
> inspect the components.

(*Id.* ¶ 12.) HHK has also created other confidential and proprietary information for its business,

including customer lists; pricing information; marketing materials and methods; pricing models;

and sales data and projections (together with the manufacturing plan, the "Protected Information").

(*Id.* ¶ 14.)

HHK implements multiple measures to protect the secrecy of its proprietary information,

including:

> [P]assword protecting all electronic devices; prohibiting cell phones,
> photographs or thumb drives in the factory; securing external hard
> drives in a locked safe; restricting access to electronic and hard copy
> information to only those with a need to know; requiring visitors to
> HHK's offices to make an appointment and sign an entry log; and
> requiring all employees to wear company-issued identification
> badges at all times while on the premises; and a variety of additional
> security measures including fences, cameras, metal detectors and
> alarm systems.

(*Id.* ¶ 16.)

HHK's Employee Handbook ("Handbook") also indicates that employees may not disclose

any trade secrets or confidential information, and states that employees exposed to confidential,

sensitive, or proprietary information may be required to sign a trade secret and non-disclosure

agreement. (*Id.* ¶ 17.) The parties agree that a non-compete or non-disclosure agreement was not

signed between HHK or any defendants in this case. (Oral Arg. Tr. (ECF No. 31) at 5:8–10.)

Additionally, the Handbook prohibits "acts of dishonesty," the disclosure of proprietary company information to competitors, engaging in outside activities that divert full efforts from HHK, and "theft, abuse, destruction, waste, or unauthorized use/possession of [HHK] property, facilities, equipment or materials." (ECF No. 1 ¶ 19.) The Handbook enforces its prohibitions through internal disciplinary penalties and was distributed to all employees, officers, and directors in the company, who signed an "Acknowledgment of Receipt" to indicate receipt and understanding of the Handbook. (*Id.* ¶ 20.) Mr. Sucharski signed the "Acknowledgment of Receipt" on January 5, 2015. (*Id.* ¶ 21.)

### 2. Mr. Sucharski's Employment and Termination from the Company

Mr. Sucharski served as General Manager and President of HHK from 2015 to 2022. As General Manager, Mr. Sucharski oversaw all aspects of the company, including "sales, business development, contracts with customers and suppliers, supplier lists, information technology, website content and design, maintaining the network server, hiring and firing employees and human resources." (*Id.* ¶ 22.) Mr. Sucharski was also responsible for developing and safeguarding the company's proprietary information. (*Id.* ¶ 23.)

In June 2022, HHK underwent an annual audit that identified several areas of correction for the company's practices and procedures. (*Id.* ¶ 24–25.) HHK found improprieties in Mr. Sucharski's management, and, therefore, on July 6, 2022, Mr. Sucharski was removed as President of HHK for poor performance and was reassigned to a new division focused on selling spare parts in the "aftermarket" directly to airlines. (*Id.* ¶ 24–25.) During this time, HHK identified additional deficiencies in Mr. Sucharski's performance. (*Id.* ¶ 28.)

On November 11, 2022, HHK requested all its employees and officers to verify in writing that they had not, and would not, misuse or disclose any Protected Information. (*Id.* ¶ 29.) Mr.

Sucharski refused to sign this verification. (*Id.* ¶ 30.) Defendants allege that Mr. Sucharski provided a certification to the company that he did not have any HHK blueprints or drawings, and that he would otherwise have his attorney review the agreement. (ECF No. 19 at 16.) Nonetheless, based on performance inadequacies and a refusal to sign the verification, HHK terminated Mr. Sucharski for cause by letter, dated November 17, 2022, and electronically transmitted to Mr. Sucharski on November 18, 2022. (ECF No. 1 ¶ 31.) On the same day, HHK sent letters asking Mr. Sucharski to return any "equipment, materials, computers, data, documents, information and other property" or protected information in his possession to HHK. (*Id.* ¶¶ 32–33.) Defendants claim that these letters also permitted Mr. Sucharski to destroy HHK data in his possession. (ECF No. 19 at 17.)

### 3.      Defendants Open Saje

The Sucharskis incorporated Saje on November 23, 2022 in Connecticut, allegedly for designing and manufacturing the same products as HHK. (ECF No. 1 ¶ 35.) Mr. Sucharski became Saje's President and General Manager, the same role he had with HHK. (*Id.*) The Saje website advertises that its "experienced team can design and qualify complex systems" and that it can "meet our aerospace customers' complex and bespoke requirements." (*Id.* ¶ 37.) According to the website, Saje has a "production facility" with "state-of-the-art manufacturing equipment complemented by an advanced, on-site testing laboratory with assembly lines controlled by the latest in [Enterprise Resource Planning] shop floor management tools." (*Id.* ¶ 38.)

Defendants allege that Saje: did not occupy office space until March 1, 2023, does not currently have AS9100 certification, and does not have a quality management system in place. (ECF No. 19 at 20.) Defendants claim that Saje has not accrued any revenue up to this point. (*Id.*)

Defendants also allege that Saje manufactures only "NAS77 bushings and other similar NAS standard bushings" which are not produced by HHK. (*Id.*)

> HHK asserts:

> > Saje could not have opened an office, acquired a manufacturing facility, rented a sales office, purchased highly specialized and expensive manufacturing equipment, hired manufacturing workers and purportedly developed the capacity to manufacture the Products within days of being terminated without significant advance planning, fundraising and organization and without misappropriating HHK's Protected Information.

(ECF No. 1 ¶ 39.)

HHK further alleges that, "by creating a competing company engaged in virtually the same manufacturing and sales activities as HHK, it is inevitable that Mr. Sucharski will necessarily use and disclose HHK's Protected Information for his own personal gain and to create an unfair competitive advantage for Saje." (*Id.* ¶ 40.)

Upon learning of the incorporation of Mr. Sucharski's company, HHK retained Cobra Legal Solutions, LLC, "a company that specializes in digital forensics and the collection, analyzing and processing of electronically stored information ('ESI') for litigation matters, to perform a forensic image and analysis of the company laptop and desktop computer used exclusively by Mr. Sucharski throughout the course of his employment." (*Id.* ¶ 42.) The forensic analysis indicated that the laptop had been "factory reset" on November 18, 2022, thereby permanently deleting all files and data on the device. (*Id.* ¶ 43.)

Prior to the factory reset, the HHK laptop had included the company's proprietary information, including communications with customers and suppliers, pricing information, customer contacts, sales data and forecasts, customer needs and requirements, and marketing

materials. (*Id.* ¶ 44.) The analysis also indicated that an HHK sales document was deleted from the computer between November 14 and 18, 2022. (*Id.* ¶ 45.)

Based on this information, HHK alleges that Mr. Sucharski "downloaded and transferred to himself all of the data located on the laptop before performing the factory reset and is currently using such information to design and manufacture the Products for his new company to gain an undeserved competitive advantage and to solicit business from HHK's existing customers." (*Id.* ¶ 46.)

### B.    Procedural History

On March 24, 2023, HHK filed its Complaint, alleging the following causes of action: (1) violation of the Defend Trade Secrets Act ("DTSA") (Count I); (2) violation of the New Jersey Trade Secrets Act ("NJTSA") (Count II); (3) misappropriation of HHK's trade secrets under the common law (Count III); (4) breach of contract (Count IV); (5) tortious interference with contract (Count V); (6) breach of fiduciary duty (Count VI); (7) unjust enrichment (Count VII); and (8) violation of the New Jersey Computer Related Offenses Act ("CROA") (Count VIII). (ECF. No. 1 ¶¶ 47–101.)

On March 24, 2023, HHK filed an application for a Preliminary Injunction and Temporary Restraining Order. (ECF No. 3.) On March 24, 2023, this Court ordered Defendants to show cause why a preliminary injunction should not be issued. (ECF No. 6.) Defendants filed a response to the Order to Show Cause on April 10, 2023. (ECF No. 19.) HHK filed a reply to Defendants' response on April 17, 2023. (ECF No. 23.) Defendants filed a sur-reply to HHK's reply on April 28, 2023. (ECF No. 28.)

On April 10, 2023, Defendants filed a Motion to Dismiss. (ECF No. 18.) On April 17, 2023, HHK filed an opposition to the Motion to Dismiss. (ECF No. 24.)  On May 8, 2023, the Court held oral argument on the Motion to Dismiss. (ECF No. 30.)[2]

## II.   MOTION TO DISMISS

### A.   Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

---

[2] The parties held status conferences on March 29, 2023 (ECF No. 14) and June 20, 2023. (ECF No. 35.) The parties held settlement conferences before Magistrate Judge Jessica S. Allen on July 11, 2023 (ECF No. 36) and August 30, 2023. (ECF No. 37.)

liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a

court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.    Decision

Defendants allege that HHK's Complaint should be dismissed under Federal Rule of Civil Procedure 8(a)(2) for failure to make a "short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 18 at 1.)

### 1.    Misappropriation of Trade Secrets Under DTSA and NJTSA (Counts I and II)

Defendants argue HHK's claims that they violated the DTSA and NJTSA should be dismissed because: (1) HHK relies on an impermissible theory of "inevitable disclosure" which contradicts certain facts, including Mr. Sucharski's representation that he retained no company information, (2) HHK has failed to adequately plead the existence of a specific trade secret, instead giving a general listing of categories of information, (3) HHK has not adequately pled the circumstances under which the information was acquired, used, or disclosed, and (4) HHK has not plausibly alleged harm or damage caused by the misappropriation. (ECF No. 18 at 8–18.) HHK argues: (1) it has identified specific categories of protected trade secrets, (2) it has adequately alleged misappropriation via circumstantial evidence as well as information and belief, and (3)

cognizable harm is adequately pled whenever a plaintiff alleges a trade secret and its misappropriation. (ECF No. 24 at 9–21.)

Because "courts in this district 'fold' the DTSA analysis into the NJTSA review," the Court considers the two claims together. *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (quoting *Scherer Design*, No. 18-3540, 2018 WL 3613421, at *4).

There is no heightened pleading standard for a misappropriation of trade secrets claim. *See IDT Corp. v. Unlimited Recharge, Inc.*, Civ. A. No. 11-4992, 2012 WL 4050298, at *7 (D.N.J. Sept. 13, 2012); *Oakwood Labs v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021). To state a claim under DTSA and the NJTSA, a plaintiff must allege:

> (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that it is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.

*Oakwood Labs*, 999 F.3d at 905. Circumstantial claims may be credited at the motion to dismiss stage given the lack of discovery to inform the Complaint, so long as these claims raise a right to relief above the speculative level. *Oakwood Labs,* 999 F.3d at 913. The Court addresses Defendants' arguments to dismiss the claims based on the first and third elements, as well as for failure to allege damages.

### a.    HHK Sufficiently Pled Specific Trade Secrets

A plaintiff must allege two elements to demarcate a trade secret in a pleading. First the complainant "must sufficiently identify the information it claims as a trade secret," and, second, the complainant "must allege facts supporting the assertion that the information is indeed

protectable as such." *Oakwood Labs,* 999 F.3d at 905. Here, Defendants argue that HHK has not identified particular information that constitutes a trade secret, claiming that the Complaint only lists "generic categories of information," which are too broad to meet the specificity requirements. (ECF No. 18 at 11–12.) HHK responds that it has listed information that "points to a reasonably finite category of information as containing its trade secrets" and has therefore met the applicable "notice pleading" standard. (ECF No. 24 at 9.) The Court agrees with HHK and finds, for the reasons set forth below, that properly demarcated lists of categories of information meet the pleading standard set by the Third Circuit. Therefore, HHK's lists constitute reasonably demarcated categories. HHK's claims on Counts I and II cannot be dismissed on this ground.

In identifying a trade secret, (i) "[t]he allegedly misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it"; and (ii)

> the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Oakwood Labs*, 999 F.3d at 906–13. A complaint does not, however, need to "spell out the details" of the trade secret to avoid dismissal. *Oakwood Labs*, 999 F.3d at 906 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252, 67 Cal. Rptr. 19 (Cal. Ct. App. 1968)). Indeed, sufficient identification of the information does not require scientific specificity at the complaint stage, rather, lists of categories of data can be sufficient. *OWAL Inc. v. Caregility Corp.*, No. 3:21-cv-13407, 2022 WL 890182 (D.N.J. Mar. 25, 2022).

Whether a complainant has adequately demarcated a trade secret is a fact-specific inquiry for each case. *Id.* (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or.

2015)). The standard, however, is one of notice, not of detail, and this District has been clear that a plaintiff is not required to "articulate each individual trade secret by name and description" at the pleading stage. *Rodgers Grp., LLC v. Lewis*, No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sept. 7, 2022).

The listing of relatively broad categories of information can be acceptable at the pleading stage, particularly if these lists are linked to the circumstances by which the information is stolen (such as listing categories of information that may have been included on a pitch deck or thumb drive that was taken). For example, in *OWAL Inc. v. Caregility Corp.*, No. 21-cv-13407, 2022 WL 890182 (D.N.J. Mar. 25, 2022), the court held that lists of "confidential information" including "notes, analyses, compilations, studies, or other documents," and "evaluation materials" including, among other categories, "financial information, business plans and strategies [and] marketing plans" was sufficient to plead specific trade secrets, as this information was linked to "materials [plaintiff] provided to [defendant]." *OWAL Inc.*, 2022 WL 890182 at *7.

HHK, in the Complaint, specifies eight categories of protected information, these being:

- Manufacturing Blueprints

- Third-party Manufacturing Blueprints

- Sales Blueprints

- Work Order/Processing Specifications

- Material Specifications

- Computer Numerical Control Programming

- Proprietary Tools

- Inspection Reports

(ECF No. 1 ¶ 12.) This list is linked to documents which HHK believes may have been taken from Mr. Sucharski's computer. (*Id.* ¶ 46.)

The listed categories, and their link to a claim of potential misappropriation, mimic the relatively broad types of documents specified in the *OWAL* case, where the pleading was held to be sufficiently specific. They include types of proprietary information that are defined and circumscribed that serve to put the defendants "on notice of the bases for the claim being made against [them]." *Oakwood Labs*, 999 F.3d at 906. Defendants have been given clear categories of specific types of documents they are alleged to have misappropriated.

Defendants' reliance on *Mallet* is misplaced, as that case dealt with the specificity required to identify trade secrets in a preliminary injunction, not the specificity required of a plaintiff in a complaint to survive a motion to dismiss. *Mallet and Co., Inc. v. Lacayo*, 16 F.4th 364, 379–90 (3d Cir. 2021). Since a party's conduct is being constrained by a preliminary injunction, a court must be more specific in describing trade secrets in that type of order. This obligation does not apply to a plaintiff who is not using the power of the court to constrain defendants' conduct but is rather attempting to state a claim. The language calling for greater specificity for a preliminary injunction in that case is therefore of limited relevance in this motion to dismiss.

Accordingly, because HHK has adequately identified specific trade secrets in its Complaint, Counts I and II cannot be dismissed on this ground.

> **b.    HHK Has Sufficiently Pled Circumstantial Evidence of Misappropriation**

Defendants argue that Counts I and II should be dismissed because HHK has failed to allege: (1) "what specific information [Mr.] Sucharski allegedly took from his HHK laptop and how any information was used or disclosed," (2) HHK does not allege "any other suspicious activity" such as "unusual downloading activity from HHK databases or portals, the transmission

14

of files or data from [Mr.] Sucharski's HHK email account to his or to a third party's outside email account or cloud account," and (3) HHK "only speculates about [Mr.] Sucharski's conduct and pleads nothing as to whether and how Mrs. Sucharski or Saje acquired anything." (ECF No. 18 at 14–15.)

HHK argues it has sufficiently alleged both actual misappropriation and "inevitable disclosure," asserting that actual misappropriation was alleged by claiming "[Mr.] Sucharski had access to all of HHK's trade secrets, refused to sign a confidentiality acknowledgment, factory-reset his company laptop permanently destroying trade secrets mere hours after he was terminated, [and] established a competing business days later selling virtually identical parts as HHK." (ECF No. 24 at 15.) HHK also claims the "inevitable disclosure" doctrine allows it to "demonstrate that there is a sufficient likelihood of inevitable disclosure of its trade secrets to a competitor" by a former employee. (*Id.* at 20.)

Circumstantial evidence is sufficient to allege misappropriation of a trade secret at the pleading stage. *Oakwood Labs*, 999 F.3d at 913. Trade secret owners must be given a fair opportunity to prove misappropriation, and the Court must be mindful that the owner does not have the benefit of discovery to provide direct evidence at this stage. *Id.* at 910. The Third Circuit has previously ruled:

> Misappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.

*SI Handling Sys. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) (quoting *Greenberg v. Croydon Plastics Co.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974)). Here, the standard is even lower, with HHK

merely needing to persuade the Court that its version of events is plausible. *Ashcroft*, 556 U.S. at 672 (quoting *Twombly*, 550 U.S. at 570).

HHK alleges "[Mr.] Sucharski acquired knowledge of and gained access to all of [HHK's] Protected Information" (ECF No. 1 ¶ 23), refused to sign a confidentiality agreement (*id.* ¶¶ 29–30), "downloaded and transferred to himself all of the data" on his company laptop before factory-resetting it (*id.* ¶ 46), and established a competing business designing and manufacturing the same products as HHK. (*id.* ¶ 35). These allegations sufficiently outline Mr. Sucharski's misappropriation of HHK's trade secrets, by pleading both his access to and use of secret information.

In the Complaint, HHK sufficiently alleges circumstances where Mr. Sucharski had access to HHK's proprietary information. HHK claims that Mr. Sucharski gained access to all eight categories of Protected Information when he served as General Manager and President of HHK (*id.* ¶ 22), and that he had access to an HHK laptop which contained "large amounts of Protected Information" (*id.* ¶ 44). These circumstantial allegations are similar to the allegations in *Oakwood Labs*, where plaintiffs alleged "[defendants] obtained access to certain trade secret information of [plaintiff's] from the Leuprolide Memo and confidential disclosures during the parties' business venture discussions." *Oakwood Labs*, 999 F.3d at 911. The Third Circuit also noted that "it is reasonable to infer that [defendant] also obtained much more detailed access to [plaintiff's] trade secret information through Dr. Thanoo, given the allegations about his extensive knowledge of [plaintiff's] Microsphere Project, the timing of Aurobindo's recruitment of him, and his own LinkedIn profile describing his work at [defendant]." *Id.* at 911–12. Here, HHK has alleged circumstances where Mr. Sucharski had access to protected information, both generally in his role

16

as General Manager and President, and more specifically through his access to the HHK laptop. These allegations clearly plead that Mr. Sucharski had access to HHK's trade secrets.

The circumstantial allegations regarding the Sucharskis' speed in setting up Saje, and Saje's "virtually identical" parts, are analogous to the pleadings made in *Oakwood Labs* that survived a motion to dismiss. *Oakwood Labs*, 999 F.3d at 911–13. The Complaint alleges that Mr. Sucharski's speed in setting up Saje indicates he is using HHK's trade secrets. (ECF No. 1 ¶ 39.) In *Oakwood Labs*, the plaintiff alleged that its "Microsphere Project is not something that could have been replicated in one-to-four years . . . absent misappropriation of [plaintiff's] trade secrets." *Oakwood Labs*, 999 F.3d at 911. The Third Circuit found that this allegation was a "completely plausible contention" that was "well-supported by factual allegations" given "[defendant's] lack of experience and the complexity of microsphere product development." *Id.* Here, both parties acknowledge the complexity of the industry, with HHK alleging it is "one of only a handful of companies worldwide with the capability to manufacture the Products" (ECF No. 1 ¶ 10) and Defendants acknowledging that "[t]he aerospace manufacturing industry is highly regulated and requires advanced accreditations that take a significant time to achieve." (ECF No. 18 at 19.) Regarding experience, although Mr. Sucharski is an experienced engineer, Saje is a new company that was only formed in November 2022, and is therefore an inexperienced company in the market. (*Id.* at 8.)

Defendants argue HHK is required to be more specific regarding the circumstances in which Mr. Sucharski took secret data. (ECF No. 18 at 14–15.) But HHK is only expected to provide circumstantial evidence at this stage of pleading, in order to allow them to allege plausible claims without the benefit of discovery. *Oakwood Labs,* 999 F.3d at 912–13. HHK has met this burden

by alleging both that Mr. Sucharski had access to secret information, and that the information was used to Saje's benefit.

Accordingly, Counts I and II of the Complaint cannot be dismissed for failure to allege misappropriation.

### c. Misappropriation of Trade Secrets is Inherently Damaging

In their final argument on Counts I and II, Defendants contend the counts should be dismissed for HHK's failure to plead "harm or damages." (ECF No. 18 at 19.) Defendants claim that HHK has not alleged (1) Saje has obtained the necessary certifications, and built the necessary facilities, to compete with HHK; (2) Saje is selling the same products as HHK; and (3) HHK is not an exclusive supplier to any customer, meaning that it has not necessarily lost any business to Defendants. (ECF No. 18 at 19–20.) HHK argues that "by statutory definition, trade secret misappropriation is harm." (ECF No. 24 at 21 (quoting *Oakwood Labs*, 999 F.3d at 913)). Therefore, "cognizable harm is pled when a plaintiff adequately alleges the existence of a trade secret and its misappropriation." (*Id.* (quoting *Oakwood Labs*, 999 F.3d at 913–14)).

The Third Circuit has held that trade secret misappropriation always causes harm because the value of the secret is destroyed when it is revealed to unauthorized parties. *Oakwood Labs*, 999 F.3d at 913. In this sense, a trade secret creates value for its owner by its secrecy. When that secrecy is lost, the owner "has lost the exclusive use of trade secret information, which is a real and redressable harm." *Id.* at 914.

Additionally, a plaintiff could sustain competitive harms from a competitor using its secrets. A competitor using trade secrets could reduce the plaintiff's market share, particularly because it might enjoy a competitive advantage from being able to use the secrets without incurring cost for

18

their research and development. *Id.* Therefore, there are multiple implied harms inherent in a claim of trade secret misappropriation.

Accordingly, Counts I and II of the Complaint cannot be dismissed for failure to allege damages. In sum, HHK has sufficiently pled specific categories of trade secrets by pleading: Mr. Sucharski may plausibly have had access to its trade secrets; Mr. Sucharski and Saje used its trade secrets; and damages occurred from the misappropriation of trade secrets. Accordingly, Defendants' Motion to Dismiss Counts I and II of the Complaint is **DENIED**.

### 2.      Common Law Misappropriation (Count III)

Defendants argue that Count III of the Complaint, which makes a claim for common law misappropriation, is pre-empted by section 9(b) of the NJTSA, and should be dismissed on this ground. (ECF No. 18 at 20.) Section 9(b) of the NJTSA reads: "This act shall supersede conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." N.J. Rev. Stat. § 56:15-9(b) (2022). HHK argues that Section 9(a) preserves additional common law actions on trade secrets, which can be pled cumulatively along with the statute. (ECF No. 24 at 22.) That subsection states:

> The rights, remedies and prohibitions provided under this act are in addition to and cumulative of any other right, remedy or prohibition provided under the common law or statutory law of this State and nothing contained herein shall be construed to deny, abrogate or impair any common law or statutory right, remedy or prohibition except as expressly provided in subsection b. of this section.

N.J. Rev. Stat. § 56:15-9(a) (2022).

The New Jersey Superior Court, Chancery Division held that "our legislature was well aware of the rights and remedies afforded aggrieved litigants under our common law and expressly intended to preserve, rather than abrogate or preempt, those rights and remedies." *Scs Healthcare Marketing, LLC v. Allergan Usa*, *Inc.*, No. C-268-12, 2012 WL 6565713 (N.J. Ch. Div. Dec. 7,

2012). The court explained the existence of both sections 9(a) and 9(b) by stating that it could "conceive of instances where the Trade Secrets Act may conflict with common law, which must in turn then yield to the newly enacted statutory provisions." *Id.* The District of New Jersey later indicated in obiter dicta that, as a result of this case, "it is questionable as to whether the [NJTSA] preempts common law claims." *Par Pharm. Inc. v. Quva Pharma, Inc.*, No. 17-CV-6115, 2019 WL 356549, at *12 (D.N.J. Jan. 28, 2019). These cases show that the legislature only wished to pre-empt state law that clearly conflicted with the terms of the statute. Common law actions which do not conflict with the statute can be maintained.

Here, there is no conflict between HHK's common law misappropriation and the terms of the NJTSA. The common law claim is asserted on identical grounds to the NJTSA claim, meaning that it is exactly the type of cumulative claim which the Chancery Division found permissible in *Scs Healthcare*.

Accordingly, Defendants' Motion to Dismiss Count III of the Complaint is **DENIED.**

### 3.    Breach of Contract (Count IV)

Defendants argue that the Breach of Contract claim in Count IV should be dismissed because the Handbook is not an enforceable contract. (ECF No. 18 at 23–26.) They note that the Handbook specifies that employment is "at-will" and can be terminated "with or without cause." Defendants argue that these provisions make the entire Handbook unenforceable. (*Id.*) Defendants also allege that there was no "meeting of the minds" for a valid contract, because HHK "reserves the right to revise, supplement, or rescind any provisions of the handbook" with or without notice. (*Id.* at 25–26.) HHK counters that the "at-will" employment language only makes the Handbook unenforceable as to the term of employment, and that other provisions of the Handbook are correspondingly enforceable. (ECF No. 24 at 27–28.) HHK also argues that the legal nature of the

Handbook should be assessed based on the "reasonable expectations of employees," which in this case would be that the Handbook is a binding contract, given that the Handbook was widely distributed, definite and comprehensive in its terms, and contained no clear and prominent disclaimers other than the employment at-will statements. (*Id.* at 28–29.) HHK does not address Defendants' argument on whether there was a "meeting of the minds" for the Handbook.

The Court may consider the specific terms of the Handbook as part of this motion because it is a document that is "integral to or explicitly relied upon in the Complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). HHK's breach of contract and tortious interference with contract claims (Counts IV and V) rely on the Handbook as the operative contract. (ECF No. 1 ¶¶ 65–83.) Therefore, the Court will consider the Handbook as part of a Motion to Dismiss.

The New Jersey Supreme Court has stated that "[t]he key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees." *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 550 (N.J. 1994). Courts will consider two sets of factors to determine if a handbook is enforceable, the first being the "manual's specific provisions," and the second being the context of the handbook's preparation and distribution. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 846–47 (3d. Cir. 1996) (quoting *Witkowski*, 643 A.2d 546 at 550). When there are disclaimers in the handbook intended to limit its enforceability, a court will consider: (1) whether there is an appropriate statement clearly and straightforwardly explaining that the handbook is not contractually binding, and (2) whether the statement was sufficiently "prominent" to attract the reader's attention. *Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 535 (D.N.J. 2000) (quoting *Nicosia v. Wakefern Food Corp.*, 643 A.2d 554 at 560 (1994)). A court must also consider the scope of the disclaimer, meaning that language

disclaiming a particular contractual provision does not nullify the entire document as a contract. *Overton v. Sanofi-Aventis U.S., LLC*, No. 13–5535, 2014 WL 5410653, at *6 (D.N.J. Oct. 23, 2014) (finding that language confirming "at-will" employment "does not mean that the document does not constitute a contract").

Here, the statements in the Handbook regarding at-will employment do not by themselves nullify the contractual force of the other provisions. Rather, such language "applies only to an employee's status as an at-will employee, and not to other terms and conditions of employment." *Sams v. Pinnacle Treatment Centers, Inc.*, No. 18-CV-09610, 2021 WL 567986, at *5 (D.N.J. Feb. 16, 2021). Therefore, the inclusion of such language in the Handbook cannot serve as a basis to dismiss Count IV of the Complaint.

A more pertinent question is whether Section 0 of the Handbook, which authorizes HHK to "revise, supplement, or rescind any provisions of the handbook . . . without advance notice" (except for the employment at-will provisions) (ECF No. 3-7 at Section 0), nullifies the document as a contract. The Court finds that it does. The disclaimer meets the two-part test set out in *Zawadowicz*, because it is a statement that clearly and straightforwardly explains that the Handbook is not contractually binding on HHK and was prominent enough (being the first section of the Handbook) to attract the reader's attention. *Zawadowicz*, 99 F. Supp. 2d 518 at 535. Courts in New Jersey, and nationally, have consistently held that provisions that allow one party to modify a contract without notice are illusory. *Black Ship, LLC v. Heartland Payment Sys., LLC*, No. 21-13855, 2023 WL 3585329, at *7 (D.N.J. May 22, 2023) (noting a New Jersey Superior Court case holding that "unilateral modification provisions . . . are not allowed where no notice was required in the contract"); *Morrison v. Amway Corp.*, 517 F.3d 248, 254–57 (5th Cir. 2008) (holding that an arbitration agreement between an employer and employee was "illusory and unenforceable" in

part because "[t]here is no express exemption of the arbitration provisions from [the employer's] ability to unilaterally modify all rules"). Therefore, a unilateral modification provision cannot be enforced if it may be executed without notice.

The inclusion of this provision invalidates the entire Handbook as a contract. A handbook that can be unilaterally modified without notice cannot possibly create a "reasonable expectation . . . that it confers enforceable obligations," *Varrallo* 94 F.3d 842 at 846 (*Witkowski*, 643 A.2d 546 at 550), because such enforceability is explicitly disclaimed by one of the first provisions in the Handbook. The provision makes clear to any employee that the employer will not be bound by the terms of the Handbook and may change employment policies without notice. Because an employee would not reasonably expect the provisions of the Handbook to be binding on both employer and employee, it does not constitute a valid contract between employer and employee.

For these reasons, the Handbook does not constitute a valid contract as a matter of law, and any amendment of the Complaint as to this count would be futile under Rule 15. Accordingly, Defendants' Motion to Dismiss Count IV of the Complaint is **GRANTED with prejudice**.

### 4.        Tortious Interference with Contract (Count V)

Beyond the inadmissibility of the Handbook as a contract, Defendants argue that Count V of the Complaint, which alleges that Saje tortiously interfered with the contract between Sucharski and HHK, should be dismissed for the additional reasons that (1) Saje did not exist at the time the Handbook applied to Mr. Sucharski, and (2) Mr. Sucharski cannot induce himself to breach a contract to which he is a party. (ECF No. 18 at 26.) HHK argues that the Handbook continues to bind Mr. Sucharski after his employment, and that it has in any case alleged conduct which violated the contract during his employment. (ECF No. 24 at 29–30.) HHK does not directly address Defendants' argument that Mr. Sucharski cannot tortiously interfere with his own contract.

The Court need not address these issues as it has already held that the Handbook does not constitute an enforceable contract. A claim for tortious interference with contract requires that there first be a valid contract in existence. *Commerce Ins. Servs., Inc. v. Szczurek*, No. 05-3536, 2006 WL 8457151, at *8 (D.N.J. Jan. 6, 2006) ("It is axiomatic that a claim for interference with existing contracts requires a showing of existing contracts.") Accordingly, because there was no enforceable contract for Saje to interfere with, Defendants' Motion to Dismiss Count V of the Complaint is **GRANTED with prejudice**.

### 5.    Breach of Fiduciary Duty (Count VI)

Defendants assert that Count VI of the Complaint, which claims that Mr. Sucharski breached his fiduciary duty to HHK, should be dismissed because the NJTSA pre-empts any such claim based on misappropriation of trade secrets. (ECF No. 18 at 26–27.) To the extent that the conduct is not based on misappropriation of trade secrets, Defendants argue that it occurred after Mr. Sucharski's fiduciary duty to HHK ended. (*Id.* at 27.) HHK argues that it has alleged that Mr. Sucharski started planning his own business while still employed by HHK, thereby violating his fiduciary duty, and that the NJTSA does not otherwise pre-empt its claim against this conduct. (ECF No. 24 at 23–25.)

A common law claim is pre-empted by the NJTSA when it conflicts with the statute. The New Jersey Chancery Division held that "our legislature was well aware of the rights and remedies afforded aggrieved litigants under our common law and expressly intended to preserve, rather than abrogate or preempt, those rights and remedies." *Scs Healthcare*, 2012 WL 6565713. The court explained the existence of both sections 9(a) and 9(b) by stating that it could "conceive of instances where the Trade Secrets Act may conflict with common law, which must in turn then yield to the newly enacted statutory provisions." *Id.* The District of New Jersey later indicated in obiter dicta

that, as a result of this case, "it is questionable as to whether the [NJTSA] preempts common law claims." *Par Pharm. Inc. v. Quva Pharma, Inc.*, No. 3:17-cv-6115, 2019 WL 356549, at \*12 (D.N.J. Jan. 28, 2019).

The NJTSA is not intended to bar common law claims which do not conflict with its provisions. *Scs Healthcare*, 2012 WL 6565713. Section 9(a) of the NJTSA is particularly applicable here, where a breach of fiduciary duty requires proof of different elements than a trade secret misappropriation claim. This makes a common law breach of fiduciary duty claim the kind of "other right, remedy or prohibition provided under the common law" intended to function cumulatively with the statutory trade secrets claim. N.J. Rev. Stat. § 56:15-9(a) (2022). Therefore, the NJTSA does not pre-empt the breach of fiduciary duty claim in this matter.

To show a breach of fiduciary duty, HHK must show "(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Diaz v. Bank of N.Y.*, Civ. A. No. 15-1954, 2016 WL 111420, at \*4 (D.N.J. Jan. 11, 2016) (quoting *Goodman v. Goldman, Sachs & Co.*, No. 10-1247, 2010 WL 5186180, at \*10 (D.N.J. Dec. 14, 2010)). In New Jersey, "an employee owes his employer a fiduciary duty of loyalty, which 'consists of certain very basic and common sense obligations. An employee must not while employed act contrary to the employer's interest.'" *Vibra-Tech Eng'rs, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012) (quoting *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158 (2001)). An employee can breach the duty of loyalty "by engaging in self-dealing or by taking or using legally protected information to benefit himself." *Id.* Senior employees "occupying a position of trust and confidence" may owe a higher duty of loyalty than other employees. *Cameco, Inc. v. Gedicke*, 724 A.2d 783, 789 (1999). Overall, "to avoid the possibility of charges of disloyalty, employees generally should inform employers of their plans

before establishing an independent business that might conflict with that of the employer." *Id.*

However,

> [a]n employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer.

*Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1169 (2001).

HHK has adequately pled circumstantial evidence of Mr. Sucharski's conduct to underlie the breach of fiduciary duty claim. HHK has alleged that Mr. Sucharski started working on his new business, Saje, while still employed by HHK, and that he misappropriated HHK's proprietary information during his employment. (ECF No. 1 ¶ 39.) HHK has pled that "Saje could not have opened an office, acquired a manufacturing facility, rented a sales office, purchased highly specialized and expensive manufacturing equipment, hired manufacturing workers and purportedly developed the capacity to manufacture the Products within days of being terminated without significant advance planning." (*Id.*) This allegation supports HHK's claim that Mr. Sucharski was preparing to establish Saje while still employed, and potentially used information from HHK to aid this preparation. Working on a potentially competing company while working for another employer is generally suspect under New Jersey law, and risks breaching the employee's duty of loyalty. *Cameco*, 724 A.2d at 789 (1999); *Vibra-Tech Eng'rs, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012) ("During a period of employment, an employee has a duty not to compete with his or her employer . . . . An employee may breach the duty of loyalty by actions that do not rise to the level of direct competition.") Although Mr. Sucharski was not bound by a non-compete in this case, HHK has alleged more than just mere planning for future employment. (ECF No. 1 ¶ 39.)  It has alleged misappropriation of company information to aid in

Mr. Sucharski's competition during his employment, which would constitute a breach of the duty of loyalty. (*Id.*)

For these reasons, HHK has adequately pled a breach of fiduciary duty claim based on actions during Mr. Sucharski's employment. Accordingly, Defendants' Motion to Dismiss Count VI of the Complaint is **DENIED**.

### 6.   Unjust Enrichment (Count VII)

Defendants argue that HHK's claim against them for unjust enrichment under Count VII should be dismissed as "there is no such claim under New Jersey law in this context, where no 'benefit' has been 'conferred.'" (ECF No. 18 at 27.) Defendants claim that HHK is attempting to use unjust enrichment as "a catchall 'claim' to evade its obligations to plead the elements of viable misappropriation and contract claims." (*Id.*) HHK states it adequately pled unjust enrichment as trade secret misappropriation represents a "benefit conferred" on the misappropriator. (ECF No. 24 at 30.)

HHK fails to plead a claim for unjust enrichment under New Jersey law, which only allows such a claim where the plaintiff has, under false auspices, conferred a benefit on the defendant. To state a claim for unjust enrichment in New Jersey, a plaintiff must prove "(1) the 'defendant received a benefit' from the plaintiff; (2) 'retention of that benefit [by the defendant] without payment would be unjust'; (3) plaintiff 'expected remuneration from defendant at the time [they] performed or conferred a benefit on defendant'; and (4) the 'failure of remuneration enriched [the] defendant beyond its contractual rights.'" *Semeran v. Blackberry Corp.*, No. 2:15-CV-00750, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (quoting *VRG Corp. v. GKN Realty Co.*, 641 A.2d 519, 526 (1994)). It is well established in New Jersey that it is "[e]ssential to an unjust enrichment claim" that there "is a direct relationship between the plaintiff purchaser and the defendant or 'a mistake

27

on the part of the person conferring the benefit.'" *Id.* (quoting *Hughes v. Panasonic Consumer Elecs. Corp.*, Civ. A. No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *78 (D.N.J. July 21, 2011)). Moreover, "unjust enrichment 'requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 WL 2976839 at *27 (quoting *VRG Corp.*, 641 A. 2d at 526). Renumeration generally refers to monetary compensation. *Swift v. Pandey*, Civ. A. No. 13–650, 2014 WL 1745040, at *9 (D.N.J. Apr. 30, 2014) (finding that an expectation of renumeration could include monetary compensation); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 464 (D.N.J. 2020) (holding that a plaintiff must show that it expected renumeration for the benefit to plead unjust enrichment, and that this can include an expectation of payment).

Here, there is no allegation that HHK conferred any benefit on Defendants that was unjustly retained, or that it expected any renumeration from Defendants. The nature of HHK's claim does not align with the context where an unjust enrichment claim may be pled. HHK's provision of information to Mr. Sucharski on his company laptop was not compensation for his services but was rather information provided so that he could fulfill his employment duties. In any case, the Complaint only alleges that "Defendants received a benefit" and does not allege that HHK actually conferred a benefit. (ECF No. 1 ¶¶ 91–96.)

Accordingly, HHK has not pled a claim for unjust enrichment under New Jersey law and Defendants' Motion to Dismiss Count VII of the Complaint is **GRANTED**.

### 7.    New Jersey Computer Related Offenses Act (Count VIII)

Defendants argue Count VIII of the Complaint should be dismissed because HHK has failed to allege that Mr. Sucharski accessed any computer systems, or conducted any action on

those systems, that he was unauthorized to do. (ECF No. 18 at 21–22.) They argue HHK provided documents to Mr. Sucharski authorizing him to destroy data on the laptop. (*Id.* at 22.) Defendants also claim HHK failed to adequately plead harm or damages under the statute, as it only alleged damages based on future harm or the costs of an investigation, and could not plead any loss of information due to continuing to host the deleted data on its own servers. (*Id.* at 22–23.) HHK argues that Defendants' argument that Mr. Sucharski was authorized to delete data should be disregarded for relying on impermissible documents at the motion to dismiss stage, namely the indemnification agreement and IP letter. (ECF No. 24 at 25.) HHK also argues that it has alleged present and continuing harm from unauthorized computer access in the Complaint. (*Id.* at 25–26.)

The Court will not consider extraneous documents such as the indemnification agreement or IP letters allegedly provided to Mr. Sucharski, nor Mr. Sucharski's declaration. These documents were not relied upon in the Complaint, and therefore cannot serve to challenge the pleadings in the Complaint for this Motion to Dismiss. *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

To state a claim under the CROA, the Complaint "requires the following two elements: (1) an actor must take or damage computer data without authorization, and (2) the Plaintiff must have been 'damaged in business or property' as a result of the prohibited conduct." *Lard-VID, LLC v. Ground Support Labs, LLC*, No. BER-L-5929-20, 2021 WL 2396576, at *6 (N.J. Super. Ct. Feb. 26, 2021). Where employers give employees access to various computer systems for the performance of their duties, an employee's access of these systems cannot constitute a violation of the CROA. *Id.*

Here, HHK has sufficiently alleged that Mr. Sucharski accessed and deleted data on the laptop without authorization. The Complaint alleges that Mr. Sucharski was terminated effective

November 17, 2022 (ECF No. 1 ¶ 31), and that he deleted the data on the laptop on November 18, 2022, "the day of [his] termination." (ECF No. 1 ¶ 43.) The Complaint also states that "HHK did not authorize the laptop to be reset or altered in any way." (*Id.*) HHK has therefore alleged they no longer considered Mr. Sucharski their employee as of November 18, 2022, and that he was no longer authorized to modify the data on the laptop. These claims sufficiently allege the first element of a CROA claim.

However, as to damages, HHK claims damages for "the cost of an investigation into [Mr. Sucharski's] unlawful conduct." (ECF No. 1 ¶ 100.) New Jersey law is clear that "costs of investigation" do not qualify as damages under the CROA. *Spencer Sav. Bank SLA v. McGrover*, No. 1899-13T3, 2015 WL 966151, at *7 (N.J. Super. Ct. App. Div. Mar. 15, 2015). Although HHK's other allegations of harm are well pled, as they allege past and continuing harm from the conduct (ECF No. 1 ¶ 100), this count must be dismissed because of the improper claim for damages from the cost of an investigation.

Accordingly, Defendants' Motion to Dismiss Count VIII of the Complaint is **GRANTED**.

### 8.    Claims Against Mrs. Sucharski

Defendants separately argue that all claims against Mrs. Sucharski, these being Counts I, II, III, and VII of the Complaint, should be dismissed as "[t]he Complaint alleges no facts at all about Mrs. Sucharski aside from identifying her, asserting that the Court possesses personal jurisdiction over her, and alleging that she and [Mr.] Sucharski started Saje in November 2022." (ECF No. 18 at 27.) HHK argues:

> The Complaint adequately pleads that Janeen Sucharski was no mere figurehead, but was instrumental in creating the business and formulating its strategy – thus, she directly benefitted from her own knowing misappropriation of Plaintiff's trade secrets and is thereby liable for the causes of action asserted against her individually sounding in tort.

(ECF No. 24 at 31.)

Count VII of the Complaint has already been dismissed as to all defendants, so the Court only addresses Counts I, II, and III as to Mrs. Sucharski. The Court has already found that HHK sufficiently pled specific trade secrets to sustain its claims under Counts I, II, and III. Therefore, the issue here is whether HHK has adequately alleged the "the knowing improper acquisition, or use or disclosure of the secret" by Mrs. Sucharski. *Oakwood Labs*, 999 F.3d at 905.

HHK has not sufficiently pled that Mrs. Sucharski knowingly misappropriated its trade secrets. Both the DTSA and NJTSA specify that a defendant must have knowingly misappropriated trade secrets to be held liable. The DTSA defines "'misappropriation' as the 'acquisition of a trade secret of another by a person who **knows** or **has reason to know** that the trade secret was acquired by improper means.'" *On Location Inc. v. Popovich*, No. 22-00893, 2023 WL 2674843, at *3 (D.N.J. Mar. 29, 2023) (quoting 18 U.S.C. §§ 1839(5)(A)–(B)(i)) (emphasis added). Likewise, the NJTSA prohibits the "[a]cquisition of a trade secret of another by a person who **knows** or **has reason to know** that a person acquired the trade secret by improper means." *Nasdaq Inc. v. Miami Int'l Holdings, Inc.*, No. 17-6664, 2023 WL 4740753, at *5 (D.N.J. July 25, 2023) (quoting N.J. Stat. Ann. § 56:15-2) (emphasis added). Finally, a common law misappropriation claim can only be sustained to the extent it does not conflict with the NJTSA, meaning that the knowledge element must also be an element of that claim. *Scs Healthcare*, 2012 WL 6565713. This means that all HHK's trade secret misappropriation claims require that the user or acquirer have knowledge, or reason to know, of the improper acquisition of the secrets. *See On Location Inc.*, 2023 WL 2674843 at *3 (knowledge requirement for DTSA), *Nasdaq*, 2023 WL 4740753 at *5 (knowledge requirement for NJTSA), *Scs Healthcare*, 2012 WL 6565713 (common law trade secret claim cannot conflict with NJTSA requirements).

Courts must examine pleadings at the motion to dismiss stage to ensure that knowledge is alleged. *See Oakwood Labs*, 999 F.3d at 912 (noting that, based on the allegations in the Complaint, "it is plain that the [d]efendants acquired [plaintiff's] trade secrets knowing of their confidential nature").

HHK has not sufficiently pled that Mrs. Sucharski knowingly misappropriated its trade secrets. There is no language in the Complaint alleging that Mrs. Sucharski knew, or had reason to know, that she was acquiring or using HHK's trade secrets. Accordingly, based on this deficiency, the trade secret misappropriation claims in Counts I, II, and III cannot be maintained against Mrs. Sucharski, and Defendants' Motion to Dismiss Counts I, II, and III against Mrs. Sucharski is **GRANTED**.

### 9. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### III. PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

#### A. Legal Standard

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).

In order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and
> (2) that it will be irreparably injured . . . if relief is not granted . . . .
> [In addition,] the district court, in considering whether to grant a
> preliminary injunction, should take into account, when they are
> relevant, (3) the possibility of harm to other interested persons from
> the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary injunction also should not be issued where material issues of fact are in dispute. *Vita-Pure, Inc. v. Bhatia*, Civ. A. No. 14-7831, 2015 WL 1496396, at * 3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, Civ. A. No. 14-cv-04984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014).

## B.    Decision

HHK seeks a preliminary injunction and temporary restraining order to prevent Defendants from using their trade secrets and manufacturing, marketing, or selling products which use their trade secrets. (ECF No. 3 at 3.) HHK also seeks orders requiring Defendants to return all HHK's

trade secrets in their possession, and destroy all HHK's business records in their possession, as well as requiring Defendants to aid persons or entities engaging or performing the demanded activities. (*Id.* at 3–4.)

HHK claims that Defendants are causing irreparable injury by using HHK's trade secrets to create and market directly competing products to HHK's customers. (ECF No. 23 at 11.) HHK supports its application by proffering declarations from presidents of the company's departments and the owner of the company (ECF Nos. 3-6, 23-1, 23-4), email communications between Mr. Sucharski and certain executives at Boeing (a customer of HHK) (ECF Nos. 23-2, 23-5), and documents relating to Mr. Sucharski's termination and subsequent establishment of Saje, including a termination letter (ECF No. 3-9) and screenshots of Saje's website. (ECF No. 23-3.)

### 2.      Reasonable Probability of Eventual Success in Litigation

To satisfy the first prong of the preliminary injunction inquiry, a plaintiff must demonstrate a likelihood of success on the merits of the action. *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). At the preliminary injunction stage, a plaintiff need only show a reasonable chance of winning or, in other words, a chance that is "significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179.

The Court has already dismissed HHK's breach of contract claim in Count IV, tortious interference claim in Count V, unjust enrichment claim in Count VII, and Computer Related Offenses Act claim in Count VIII. Therefore, the Court will only evaluate HHK's misappropriation of trade secrets claims (Counts I–III) and breach of fiduciary duty claim (Count VI) for their probability of success.

### a.     Trade Secrets Claims (Counts I, II, and III)

HHK alleges that it will prevail on its trade secrets claims because it has identified categories of protected information Mr. Sucharski either directly misappropriated in creating his own business or is likely to misappropriate to benefit his business. *(Id.* at 11–15.) Defendants argue that HHK has failed to sufficiently identify protected secrets, or the circumstances in which they may have been misappropriated, and that, in any case, HHK has not alleged any harm from Saje's competition, particularly given that Saje does not intend to manufacture the same products as HHK. (ECF No. 19 at 22–25.)

Both the NJTSA and the DTSA provide prospective injunctive relief for actual or threatened misappropriation of trade secrets. N.J. Stat. Ann. § 56:15-1, *et seq*; 18 U.S.C. § 1836(b)(3)(A); *see also Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom. Scherer Design Grp., LLC v. Ahead Eng'g LLC,* 764 F. App'x 147 (3d Cir. 2019). The statutes require a plaintiff "demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). Because "courts in this district 'fold' the DTSA analysis into the NJTSA review," the Court considers the two claims together. *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (quoting *Scherer Design*, No. 18-3540, 2018 WL 3613421, at *4). Additionally, because the elements of a common law trade secret claim cannot conflict with the NJTSA, the Court will consider that claim along with the NJTSA claim. *Scs Healthcare*, 2012 WL 6565713.

Courts assess an application for a preliminary injunction on whether it has a reasonable chance of success, *Reilly*, 858 F.3d at 179, a higher standard than a motion to dismiss, which only requires a facially plausible claim. *Ashcroft*, 556 U.S. at 672. A plaintiff may, therefore, need to further substantiate their allegations to prevail on an application for injunctive relief compared to what is required to survive a motion to dismiss. *Watchung*, 2014 WL 5392065 at *2–*7 (D.N.J. Oct. 23, 2014) (finding that plaintiff had not carried evidentiary burden for injunctive relief while also denying motion to dismiss on four of five counts of the complaint), *Malcolm v. Bray*, Civ. A. No. 19-11734, 2022 WL 225029 (D.N.J. Jan. 25, 2022) (denying injunctive relief as inadequately pled while also denying motion to dismiss complaint). In this context, to succeed in an application for a preliminary injunction, a plaintiff must define their trade secrets with appropriate precision to ensure a tailored order, and to allow the Court to accurately determine if there is a likelihood of success on the claim. *See Mallet*, 16 F.4th 364 at 381–85.

HHK has not adequately specified its trade secrets to allow for injunctive relief. HHK generally asks the Court to enjoin Defendants from "using, exploiting, or disclosing trade secrets, proprietary or confidential information taken or acquired from Plaintiff." (ECF No. 3 at 2.) It then specifies twelve non-exclusive categories of secret information, including categories such as customer lists, sales data, manufacturing blueprints, and inspection reports. (*Id.*) The categories have additional descriptions of no more than two sentences, each of which are copied directly from the Complaint. (*Id.*) These broad descriptions are akin to the list in the *Mallet* case which was held to be insufficient to ground injunctive relief. There, the trial court enjoined the defendant from using the plaintiff's trade secrets based on a general list of proprietary information, including categories such as "[plaintiff's] formulas; customer purchase orders demonstrating [plaintiff's] pricing . . .; [plaintiff's] completed organic certifications . . . [plaintiff's] product specification

36

sheets." *Mallet* 16 F.4th 364 at 382. The Third Circuit found that these descriptions "falter[] against the standard for specifying a trade secret," *id.* at 382, and did not allow the court to "assess [plaintiff's] likelihood of success in establishing that the information the Defendants acquired, disclosed, or used . . . trade secret information or that misappropriation of a trade secret has occurred" *id.* at 387.

Here, HHK's broad categories similarly make it impossible for the Court to determine that it is reasonably likely to succeed on its misappropriation of trade secrets claims. In describing categories such as blueprints, specifications, and reports, HHK has not adequately stated the specific data Defendants may have in their possession. *See id.* at 384 (finding that reference to "formulas" in injunction required identification of specific formulas). For instance, in describing "Sales Blueprints" in its proposed order, HHK writes that these are "documents setting forth the fit, form and function of a component and provided to customers." (ECF No. 3 at 2.) HHK does not specify what blueprints Defendants have in their possession at this time, nor how these documents can be distinguished from publicly available information. Such broad descriptions are not "narrowly tailored to reach only those acts that closely relate to the unlawful conduct," *Mallet,* 16 F.4th 364 at 389, and do not allow the Court to assess HHK's likelihood of success *id.* at 387.

Accordingly, HHK has not demonstrated a likelihood of success on its trade secret misappropriation claims.

### b.    Breach of Fiduciary Duty Claim

To show a breach of fiduciary duty, HHK must show "(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Diaz*, 2016 WL 111420 at *4 (quoting *Goodman*, 2010 WL 5186180 at *10). Overall, in order "to avoid the possibility of charges of disloyalty, employees

generally should inform employers of their plans before establishing an independent business that might conflict with that of the employer." *Id.* However, "[a]n employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer." *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1169 (2001) (quoting *Auxton Comput. Enters. v. Parker*, 416 A.2d 952, 955 (N.J. App. Div. 1980)).

HHK has not presented adequate evidence that Mr. Sucharski engaged in any self-dealing or misappropriation of legally protected information during his employment. Given that HHK admits that Mr. Sucharski is not governed by a non-compete or non-solicitation agreement (ECF No. 31 at 5), HHK must show some active act of wrongdoing during Mr. Sucharski's employment to prove a reasonable chance of success on its breach of fiduciary duty claim. HHK alleges only circumstantial information of such wrongdoing. In its Complaint, HHK speculates on one instance where information was taken, stating that "upon information and belief, Sucharski downloaded and transferred to himself all of the data located on the laptop before performing the factory reset." (ECF No. 1 ¶ 46.) HHK does not identify what specific information was taken at this time. Beyond this specific instance, HHK is only able to generally allege that Mr. Sucharski took information because he is soliciting HHK customers and has otherwise set his business up quickly. (ECF No. 3-1 at 17.) HHK's inability to identify instances where Mr. Sucharski took legally protected information contrasts with other cases where plaintiffs have identified specific information exchanges to ground injunctive relief. *See Mallet*, 16 F.4th 364 at 374–75 (plaintiff specifically identified emails containing its formulas sent to defendant's personal email, as well as "over 1,000 documents" containing "metadata associated with [plaintiff]")); *JRM Constr. Mgmt., LLC v.*

*Plescia*, No. 23-cv-932, 2023 WL 2770479, at *5 (D.N.J. Apr. 4, 2023) (defendant admitted to using Plaintiff's company issued laptop to "save 'massive amounts of Plaintiffs' files and folders'"); *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, Civ. A. No. 08-4369, 2008 WL 4630486, at *2 (D.N.J. Oct. 17, 2008) (*rev'd on other grounds*, No. 08-4236, 2009 WL 105752 (3d Cir. Jan. 15, 2009)) (defendant admitted providing copies of plaintiff's information to a third party, and only disputed the secrecy of the information).

Here, the Court cannot conclude that HHK has a reasonable probability of success on its claim without more specific evidence. This is particularly so because Mr. Sucharski denies having misappropriated any protected information. (ECF No. 19 at 23.) *JRM*, 2023 WL 2770479, at *5 (D.N.J. Apr. 4, 2023) (where plaintiff and defendant disputed whether plaintiff's information was taken, an injunction cannot issue before "a robust discovery and litigation process"). Because HHK has not shown Mr. Sucharski's wrongdoing at this stage, the motion is premature prior to discovery. Accordingly, HHK has not demonstrated a likelihood of success on its breach of fiduciary duty claim.

### IV.   CONCLUSION

Because HHK must prove that all four factors weigh in its favor, and the Court has concluded the first factor of likelihood of success on the merits weighs against injunctive relief, HHK's applications for a temporary restraining order and a preliminary injunction are **DENIED**.

Date: November 9, 2023                     */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           **UNITED STATES DISTRICT JUDGE**