**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HO-HO-KUS, INC. | **23-cv-01677 BRM-JSA** |
| Plaintiff, | |
| -against- | **Motion Day: May 6, 2024** |
| STEVEN SUCHARSKI, JANEEN SUCHARSKI and SAJE AEROSPACE, INC., | |
| Defendants. | |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**MOTION TO DISMISS AMENDED COUNTERCLAIMS**

**KANE KESSLER, P.C.**
600 Third Avenue
New York, NY 10016
(212) 541-6222

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... *ii*

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT ...............................................................................................2

I.    SUCHARSKI FAILS TO STATE A CLAIM UNDER CEPA ........................2

    A.    No Specific Factual Allegations that Sucharski Objected to, or Refused to Comply with, Nepola's Demands to Cut Corners ..................2

    B.    No Substantial Nexus between Nepola's Demands to Cut Corners and Violation of Law or Policy ........................................................5

        1.    31 U.S.C.A. § 3729 ("False Claims Act") ("FCA")...........................5

        2.    "Clear Policy Mandates of Safety"....................................................7

    C.    No Substantial Nexus Between Nepola's Demand to Fire Kennedy and Violation of Law or Policy ........................................................9

        1.    CEPA ...................................................................................9

        2.    49 U.S.C.A. § 42121.......................................................................10

    D.    No Substantial Nexus between Sucharski's Refusal to Sign the IP Acknowledgment and Violation of Defend Trade Secrets Act...............12

    E.    No Causal Connection ..............................................................12

II.    DEFENDANTS FAIL TO STATE CLAIMS FOR DEFAMATION .............14

CONCLUSION ..........................................................................................16

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Abbamont v. Piscataway Twp. Bd. of Educ.*,
   138 N.J. 405 (1994) ...........................................................................10
*Arce v. Bank of Am.*,
   2013 WL 6054817 (D.N.J. Nov. 15, 2013) ...........................................4
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................3
*Battaglia v. United Parcel Serv., Inc.*,
   214 N.J. 518 (2013) .......................................................................4, 10
*Berdzik v. Physicians Endoscopy, LLC*,
   2021 WL 3260857 (D.N.J. July 30, 2021) ...........................................8
*Canfield Sci., Inc. v. Melanoscan*, LLC,
   2017 WL 2304644 (D.N.J. May 25, 2017)..........................................14
*Chiofalo v. State*,
   238 N.J. 527, 213 A.3d 900 (2019) .................................................4, 6
*D'Annunzio v. Prudential Ins. Co. of Am.*,
   192 N.J. 110 (2007) .......................................................................9, 10
*Dzwonar v. McDevitt*,
   177 N.J. 451 (2003) ............................................................... 5, 12, 13
*Eddy v. State*,
   2008 WL 5118401 (N.J. Super. Ct. App. Div. Dec. 8, 2008) ...............8
*Eyre v. Bloomfield Sav. Bank*,
   177 N.J. Super. 125 (N.J. Super. Ch. Div. 1980) ...............................10
*Ferrante v. Amgen, Inc.*,
   2014 WL 1092555 (D. N.J. Mar. 18, 2014) ....................................7, 14
*Floorgraphics, Inc. v. New Am. Mktg. In-Store Servs., Inc.*,
   2006 WL 2846268 (D.N.J. Sept. 29, 2006) ........................................15
*Gillon v. Bernstein*,
   218 F. Supp. 3d 285 (D. N.J. 2016)....................................................15
*Kern v. Med. Protective Co., Inc.*,
   2018 WL 4502187 (D. N.J. Sept. 20, 2018) .......................................14
*Martone v. Jet Aviation Flight Servs. Inc.*,
   2020 WL 3969919 (D.N.J. July 13, 2020) ..........................................11

*Paskas v. United Parcel Serv., Inc.*,
  2023 WL 9017080 (D.N.J. Dec. 29, 2023)................................................... 4, 8, 13
*Patel v. Soriano*,
  369 N.J. Super. 192 (Super Ct App. Div. 2004)....................................15
*Patterson v. Glory Foods, Inc.*,
  2012 WL 4504597 (D.N.J. Sept. 28, 2012)..........................................5, 6
*Robert v. Autopart Int'l*,
  2015 WL 4031740 (D.N.J. June 30, 2015)............................................4
*Robles v. U.S. Env't Universal Servs., Inc.*,
  469 F. App'x 104 (3d Cir. 2012)........................................................13
*State v. Lewis*,
  185 N.J. 363 (2005) ..........................................................................9
*Thermo Fisher Sci. Inc. v. Arthur*,
  2023 WL 8435114 (E.D. Mo. Oct. 17, 2023)........................................12
*United States ex rel. Simmons v. New Horizons Cmty. Charter Sch.*,
  2020 WL 6305513 (D.N.J. Oct. 28, 2020) ............................................6

Statutes

18 U.S.C.A. § 1833 ......................................................................................12
31 U.S.C.A. § 3729 .......................................................................................5
49 U.S.C.A. § 42121 ............................................................................ 1, 5, 10
49 U.S.C.A. § 44701(a)(1)..........................................................................7
N.J.S.A. 34:19-3(c) ..................................................................................3, 6

Regulations

14 C.F.R. § 3.5 ............................................................................................7

## PRELIMINARY STATEMENT

When stripped of its conclusory and gratuitous allegations, the Amended Counterclaims fail to state a CEPA claim. *First*, there is not a single, specific allegation of whistleblowing activity by Sucharski with respect to Nepola's demands to "cut corners." Instead, Defendants merely allege that Sucharski "spoke" with Nepola about his demands, not that he "objected" or refused to comply with them. Moreover, Sucharski's belief that such demands could "potentially" constitute a false claim to the government is impermissibly speculative and unsupported by specific allegations of fraud. Nor could Sucharski have reasonably believed that Nepola's demands to "cut corners" violated "clear mandates of public safety" where the cited standards are private, not public.

*Second*, there is no substantial nexus between Nepola's alleged demand to fire Kennedy and a violation of law or policy. Defendants' argument that a CEPA claim can be based on a violation of CEPA itself is based on an untenable construction of the statute that would effectively obviate the requirement that a whistleblower identify an underlying law or policy that he believes was violated. Nor is there a substantial nexus with 49 U.S.C.A. § 42121 where there is no allegation that Nepola was even aware of Kennedy's threat to "alert the authorities" (which he made only to Sucharski).

*Third*, Sucharski's refusal to sign the IP Acknowledgment does not implicate any violation of law or policy. There is no "fundamental right" to consult with private legal counsel regarding an employment agreement (which Defendants do not contest) and failure of an employer to include the notice of immunity set forth in the DTSA does *not* render the employment agreement "illegal" or unenforceable (but only precludes the employer from obtaining exemplary damages or attorneys' fees). Finally, Defendants fail to rebut Plaintiff's argument that alleged statements made by Plaintiff were not defamatory because they were neutral and/or opinions.

## ARGUMENT

## I.    SUCHARSKI FAILS TO STATE A CLAIM UNDER CEPA[1]

### A.    No Specific Factual Allegations that Sucharski Objected to, or Refused to Comply with, Nepola's Demands to Cut Corners

The only allegation of any specific communication between Sucharski and Nepola regarding his demands to "cut corners" and "falsify" certifications is that "Sucharski *spoke* with Mr. Nepola . . . regarding those demands." (Am. CC ¶ 26)[2] CEPA, however, only protects employees who "*object*" to unlawful conduct, not

---

[1] Defendants' CEPA claim is based on only three alleged whistleblowing activities: (i) Sucharski's "objection to and refusal to abide by Nepola's unlawful demands to cut corners or to falsely certify the inspection or conformity of products to customer requirements and specifications"; (ii) Sucharski's refusal to fire Kennedy and (iii) Sucharski's refusal to sign the IP Acknowledgment. (Opp. at 28-29)

[2] "Am. CC." refers to Defendants' Amended Counterclaims, dated February 8, 2024 (Dkt. 47)

employees who *speak* about such conduct. N.J.S.A. 34:19-3(c) The allegation that Sucharski informed Nepola about *Kennedy's* objections (Am. CC ¶ 26) is insufficient to state a claim under CEPA, which requires that *Sucharksi* engaged in whistleblowing activity with respect to a practice that *he* believed was unlawful.

Paragraphs 76 and 79 of the Amended Counterclaims, cited by Defendants (Opp. at 26), are "naked assertions devoid of [any] factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Paragraph 76(a) alludes to "concerns Sucharski raised" about "unsafe conduct mandated by . . . Nepola." (Am. CC ¶ 76(a)). No specific facts are plead as to when such "concerns" were raised, the "unsafe conduct" Sucharski was purportedly concerned about or the substance of his communication with Nepola. Paragraph 76(b) alleges "Sucharski's objection to and failure to abide by . . . Nepola's attempts to manipulate records and processes." (*Id*. ¶ 76(b)). Again, no specific facts are plead as to when such objection was made, the substance of such communication or how Nepola attempted to manipulate "records and processes." Paragraph 79 merely alleges that Sucharski "advised Mr. Nepola" of his concerns without any supporting factual detail. (*Id*. ¶ 79)

---

[3] "Opp." refers to Defendants' brief in opposition to Plaintiff's motion to dismiss the Amended Counterclaims, dated April 1, 2024.

Defendants incorrectly argue that such factual specificity is not required at the pleading stage. (Opp. at 6) To the contrary, it is well established that a CEPA plaintiff must provide "adequate factual support in the Complaint" of whistleblowing activity. *Robert v. Autopart Int'l*, No. 3:14-CV-07266-FLW, 2015 WL 4031740, at *3 (D.N.J. June 30, 2015) (granting motion to dismiss CEPA claim where plaintiff's alleged whistleblowing activity "lack[ed] adequate factual basis in the complaint") (citation omitted). "Vague and conclusory complaints . . . are not the sort of things that the Legislature intended to be protected by CEPA" and it is "critical" that the complaint "identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision." *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 559 (2013). *See Paskas v. United Parcel Serv., Inc.*, No. CV231162ESCLW, 2023 WL 9017080, at *7 (D.N.J. Dec. 29, 2023) (dismissing CEPA claim at pleading stage where Plaintiff failed to allege "when . . . complaints took place"); *Arce v. Bank of Am.*, No. 13-CV-2776 JAP, 2013 WL 6054817, at *4 (D.N.J. Nov. 15, 2013) (granting motion to dismiss CEPA claim where plaintiff "fail[ed] to allege *when* he reported" alleged misconduct to employer) (emphasis in original).[4]

---

[4] Defendants' argument that a CEPA claimant is not required to "cite a specific law" when engaging in whistleblowing activity (Opp. at 34) is a red herring. Although CEPA does not require "whistleblower employees to be lawyers on the spot" by identifying specific statutes that they believe were violated (*Chiofalo v.*

**B.    No Substantial Nexus between Nepola's Demands to Cut Corners and Violation of Law or Policy**

Where a party "requests that the trial court determines as a matter of law that [a CEPA claimant's] belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of-conduct and a law or public policy identified by the court or the plaintiff." *Dzwonar v. McDevitt*, 177 N.J. 451, 464 (2003). There is no nexus (let alone a substantial one) between any complaint about cutting corners and any law, rule or regulation.

*1.   31 U.S.C.A. § 3729 ("False Claims Act") ("FCA")[5]*

Defendants argue that "the Amended Counterclaim . . . notes that a false certification to a customer is '*potentially* a false claim to the government *if* the government is the customer.'" (Opp. at 26) (quoting Am. CC ¶ 12) (emphasis added) Defendants' speculation as to potential legal violations is precisely the kind of "conclusion jumping" that does not establish a "substantial nexus." *Patterson v. Glory Foods, Inc.*, No. CIV.A. 10-6831 FLW, 2012 WL 4504597, at *6 (D.N.J. Sept. 28, 2012), *aff'd,* 555 F. App'x 207 (3d Cir. 2014). CEPA expressly requires

---

*State*, 238 N.J. 527, 544, 213 A.3d 900 (2019)), they must nevertheless express their belief as to the "legality of the employer's conduct" (*Henson v. Daimler Truck N. Am. LLC*, No. 22-CV-6479 (RBK/MJS) 2023 WL 3072532, at *7 (D.N.J. Apr. 25, 2023)).

[5]  Defendants argue that only Nepola's demand to fire Kennedy, and not his demands to cut corners, implicates 49 U.S.C.A. § 42121. (Opp. at 30)

that an employee allege that he reasonably believed that the employer's conduct "*is in violation of a law*," not that it *might* violate a law. N.J. Stat. Ann. § 34-19-3(a)(1); *see Chiofalo*, 238 N.J. at 541 (CEPA plaintiff must allege reasonable belief that employer's conduct "*was violating* either a law, rule or regulation") (citations omitted) (emphasis added). Defendants must plead "facts that would support an objectively reasonable belief that a violation *has occurred*," which they have failed to do. *Id*. at 542 (emphasis added) (citation omitted); *Patterson*, 2012 WL 4504597, at *6 (an "employee's belief a law *might* someday be violated . . . does not violate any law of which this court is aware") (citation omitted) (emphasis in original).

Additionally, there is no substantial nexus between Nepola's alleged demands to "cut corners" and "potential" FCA violations because the FCA requires a showing of fraudulent intent. *United States ex rel. Simmons v. New Horizons Cmty. Charter Sch.*, No. 2:20-CV-00196-WJM-MF, 2020 WL 6305513, at *2 (D.N.J. Oct. 28, 2020). "In the context of FCA claims . . . a plaintiff . . . must "provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 3 (citation omitted).

There are no facts pleaded that Plaintiff submitted *any* claim for payment to the United States, let alone one that Plaintiff knew was false. To the contrary,

6

Defendants concede there "were legitimate business reasons for expediting the operation of the passivation tank" and that Nepola's "reporting and staging" was merely "questionable," not fraudulent. (Am. CC ¶¶ 23-25) Indeed, Defendants have abandoned their CEPA claim based on fraud, thereby acquiescing that Plaintiff did not engage in any fraudulent conduct. *Ferrante v. Amgen, Inc.*, No. CIV.A. 13-07344 SRC, 2014 WL 1092555, at *7 (D. N.J. Mar. 18, 2014) ("Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed.").[6]

### 2.    *"Clear Policy Mandates of Safety"*

Defendants argue for the first time in their Opposition that Nepola's demands to "cut corners" violated "clear policy mandates of safety" as embodied in 49 U.S.C.A. § 44701(a)(1), which authorizes the Federal Aviation administration to "promote safe flight of civil aircraft . . . by prescribing minimum standards" for "aircraft, aircraft engines and propellers." (Opp. at 27-28) The Amended Counterclaims neither specifically reference this statute, nor any "minimum standards" promulgated by the FAA. Defendants' "opposition brief

---

[6]  For the same reason, there is no substantial nexus between Nepola's alleged conduct and 14 C.F.R. § 3.5 (Opp. at 28), which prohibits "fraudulent or intentionally false statements" or "intentionally misleading statements" about aircraft parts.

may not amend [their pleading] to satisfy this requirement." *Paskas*, 2023 WL 9017080, at *5.

The only "standards" vaguely referenced in the Amended Counterclaims are not reflective of public policy mandates, and thus not actionable under CEPA, because they are "proprietary" to customers, "private," "non-governmental" and/or "industry standards." (Am. CC ¶¶ 8, 18); *see Berdzik v. Physicians Endoscopy, LLC*, No. CV 20-11656 (FLW), 2021 WL 3260857, at *7 (D.N.J. July 30, 2021) ("[T]he identified policy 'must have public ramifications, [and] ... the dispute between [an] employer and employee must be more than a private disagreement.'") (citations omitted).[7] The remaining references to "standards" are impermissibly vague and non-specific. *See, e.g.* Am. CC. ¶ 17 ("Nepola's disregard for laws and standards"); *id.* at ¶ 18 ("standards promoting the clear public policy mandate of safety"); *id.* at ¶ 76(b) ("applicable standards"). *Eddy v. State*, No. A-3129-07T1, 2008 WL 5118401, at *5 (N.J. Super. Ct. App. Div. Dec. 8, 2008) (affirming grant of motion to dismiss CEPA claim containing "broad-brush allegation[s] of a threat to . . . safety") (citation omitted).

---

[7] Defendants do not refute that the AS9100 Certification cannot serve as the predicate for a CEPA claim because it is a *private* certification standard (Pl. MOL at 16) and have therefore abandoned that claim.

**C.     No Substantial Nexus Between Nepola's Demand to Fire Kennedy and Violation of Law or Policy**

Although the Amended Counterclaims allege that Sucharski refused Nepola's demand to fire Kennedy, there is no "substantial nexus" between that demand and the violation of a law or policy.

*1.  CEPA*

Defendants contend that since CEPA protects employees who engage in whistleblowing activity with respect to a "violation of a law," and CEPA is "undoubtedly a law," they have stated a claim based on a violation of CEPA itself. (Opp. at 29-30) Defendants' facile construction of the statute is untenable.

The "goal in the interpretation of a statute is always to determine the Legislature's intent." *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 119 (2007) (citation omitted). Courts "strive to avoid statutory interpretations that "lead to absurd or unreasonable results." *State v. Lewis*, 185 N.J. 363, 369 (2005) (citation omitted). "The New Jersey Supreme Court has also held that a literal interpretation of a statutory provision should be avoided if such an interpretation would be inconsistent with the purpose of the statute." *Henson*, 2023 WL 3072532, at *4 (citation omitted).

"CEPA is remedial social legislation designed to promote two complementary public purposes: to protect and [thereby] encourage employees to

9

report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *D'Annunzio*, 192 N.J. at 119. CEPA is designed to remedy "*preexisting* common-law tort cause of action for . . . retaliatory discharge." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994) (emphasis added) (citations omitted).

Under Defendants' construction of the statute, a plaintiff could state a CEPA claim without ever identifying a law, rule, regulation or policy (other than CEPA itself) that was violated by the employer. This result is inconsistent with the purpose of remedial legislation to "create[] a remedy" for an underlying wrong. *See Eyre v. Bloomfield Sav. Bank*, 177 N.J. Super. 125, 130 (N.J. Super. Ch. Div. 1980). It would be absurd for CEPA to remedy a violation of itself. *See Battaglia*, 214 N.J. at 555 (CEPA merely "creates a cause of action for an employee who is subjected to retaliation for reporting workplace misconduct") (citation omitted). Defendants cite to no authority in support of their strained reading of the statute. The fact that no Court appears to have expressly held that a CEPA violation cannot serve as the predicate employer conduct for a CEPA claim (Opp. at 30) only reflects that no plaintiff has adopted this frivolous position.

2.    *49 U.S.C.A. § 42121*

Defendants contend that Nepola's demand that Sucharski fire Kennedy violated 49 U.S.C.A. § 42121, which "prohibits a company that performs safety-

10

sensitive functions by contract for an air carrier from retaliating if an employee threatens to report violations of FAA orders, regulations, or standards." (Opp. at 30) This *post-hoc* rationale is belied by the allegations in the Amended Counterclaims, which assert that Nepola's demand to fire Kennedy was not retaliation for Kennedy's threats to "alert the… authorities" but because Kennedy was "not willing or able to get the passivation tank . . . operational." (Am. CC ¶ 27) There is no allegation that Nepola was even aware of Kennedy's threat to "alert the… authorities," which threat was made only to *Sucharski*. (Am. CC ¶ 24). *See Martone v. Jet Aviation Flight Servs. Inc.*, No. 219CV21011BRMSCM, 2020 WL 3969919, at *5 (D.N.J. July 13, 2020) ("a [CEPA] plaintiff must be able to demonstrate the employer knew the employee engaged in protected activity") (citation omitted). Nor is there any allegation that Sucharski relayed Kennedy's threat to Nepola. Sucharski could not have had an "objectively reasonable belief" that Nepola's demand to fire Kennedy was based on a threat he never knew about. *Id.* (granting motion to dismiss CEPA claim where "Complaint does not plausibly plead facts demonstrating [defendants] had knowledge or awareness of her whistleblowing activity").[8]

---

[8] Defendants do no dispute that there is no allegation that HHK held the requisite "certificates" that would render the statute applicable.

### D.    No Substantial Nexus between Sucharski's Refusal to Sign the IP Acknowledgment and Violation of Defend Trade Secrets Act

Sucharski alleges that he reasonably believed that the IP Acknowledgment was "illegal" because it did not contain the notice of immunity required by 18 U.S.C.A. § 1833. (Opp. at 31) Under the DTSA, an employer's failure to include the notice of immunity does not render the agreement unenforceable or "illegal," but merely precludes the employer from obtaining "exemplary damages or attorneys' fees . . . in an action against an employee to whom notice was not provided." 18 U.S.C.A. § 1833(b)(3)(C); *see Thermo Fisher Sci. Inc. v. Arthur*, No. 4:23-CV-01098-JSD, 2023 WL 8435114, at *2 (E.D. Mo. Oct. 17, 2023) ("Under 18 U.S.C.A. § 1833(C), the only penalty for not including the notice of immunity provision is that the employer may not be awarded exemplary damages or attorney fees—*not that the CIIA is unenforceable*." (emphasis added). Accordingly, Sucharski's purported belief that the IP Acknowledgement was "illegal" was not objectively reasonable. *See e.g. Dzwonar*, 177 N.J. 451.[9]

### E.    No Causal Connection

Courts applying CEPA generally find that causation is not established where more than four months have passed between the whistleblowing activity and the retaliatory conduct. (Pl. MOL at 20) Here, there was an eight-month lapse between

---

[9]  Defendants fail to rebut Plaintiff's argument (Pl. MOL at 18) that there is no "right to consult with legal counsel" under New Jersey law.

Sucharski's alleged whistleblowing activity in March 2022 and his termination in November 22. (*Id.*) In an attempt to "bridge the large gap in temporary proximity," (*Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 107 (3d Cir. 2012)), Defendants argue that the acts of retaliation started much sooner, when Sucharski was demoted in July 2022. (Opp. at 36)

"[A] causal connection may be established" by "circumstantial evidence of a pattern of antagonism following plaintiff's protected conduct." *Paskas*, 2023 WL 9017080, at *6 (citation omitted). However, Defendants allege no facts explaining why, after purportedly objecting to Nepola's demands and refusing to fire Kennedy in March 2022, Plaintiff did not demote Sucharski until four months later. *Id.* (holding that complaint failed to allege causation under CEPA where "Plaintiff provides no allegations to explain why, after submitting the same complaint to his supervisor multiple times, Defendant was finally motivated to terminate him") (citation omitted). Indeed, Defendants' *post hoc* causation theory is belied by the allegations that Sucharski was demoted in July 2022 because of the June 2022 audit findings – and *not* his alleged whistleblowing activity which occurred four months earlier. (Am. CC ¶¶ 34-35)

13

## II.    <u>DEFENDANTS FAIL TO STATE CLAIMS FOR DEFAMATION</u>

Defendants argue that they have "identified the alleged defamatory statements," but provide no explanation or analysis as to how such statements are defamatory. (Opp. at 38-39) Nor do they make any attempt to refute Plaintiff's arguments that the allegedly defamatory statements are neutral and qualify for the absolute immunity accorded to statements of opinion. (Pl. MOL at 25) Accordingly, the Court should consider Defendants' defamation claim waived. *Ferrante*, 2014 WL 1092555, at *7 (citations omitted).

Defendants fail to assert the particularized facts necessary to allege special damages. "To prove such special damages requires that Plaintiffs allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication.'" *Kern v. Med. Protective Co., Inc.,* CV 13-02286-BRM-TJB, 2018 WL 4502187, at *9 (D. N.J. Sept. 20, 2018) (Martinotti, J.) Defendants fail to plead special damages based on the loss of any customers.

First Defendants admit that Boeing was not an existing customer (Am. CC ¶ 90),there are no allegations of any prospective contracts with Boeing and therefore Defendants did not lose any business with Boeing. The vague allegation of a "disruption in Saje's vendor status and ability to pursue . . . opportunities" with Boeing (*id*. ¶ 89) is insufficient. *Canfield Sci., Inc. v. Melanoscan*, LLC, No.

14

CV 16-4636, 2017 WL 2304644, at *8 (D.N.J. May 25, 2017) (allegation that plaintiff "*may* suffer lost sales or loss of prospective contracts with customers" fails to allege special damages) (emphasis in original). Likewise, merely alleging that Saje was inhibited in obtaining approval as a supplier with unnamed "third parties" fails to plead special damages.[10]

      Second, Defendants fail to allege facts necessary to establish a "diminution in business." *See Gillon v. Bernstein*, 218 F. Supp. 3d 285, 299 (D. N.J. 2016) ("When predicating a damage claim on the general diminution of business, Plaintiff must provide facts showing an established business, the amount of sales for a substantial period preceding publication, the amount of sales for a [period] subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication . . . .") (citation and quotations omitted).[11]

---

[10]  In *Floorgraphics, Inc. v. New Am. Mktg. In-Store Servs., Inc.*, No. CIV 04-3500 AET, 2006 WL 2846268 (D.N.J. Sept. 29, 2006)(unpublished opinion) (Opp. at 40), unlike here, the plaintiff alleged special damages by identifying the loss of *existing* customers.

[11]  Defendants' argument that Saje is excused from pleading these specific facts because it is a "start up" (Opp. at 40) is unavailing. Even "where requiring such identification [of special damages] is unreasonable," a plaintiff must still plead losses "with reasonable certainty." *Patel v. Soriano*, 369 N.J. Super. 192, 249 (Super Ct App. Div. 2004).

## <u>CONCLUSION</u>

For all of the foregoing reasons and principles of law, and those stated in Plaintiff's opening brief, Plaintiff's motion to dismiss Defendants' Amended Counterclaims should be granted in its entirety, together with such other, further and different relief as to the Court seems just and proper.

Dated:  April 15, 2024

Respectfully submitted,

**KANE KESSLER, P.C.**

By: */s/ Jonathan M. Sabin*
    Jeffrey H. Daichman (*pro hac vice*)
    Dana M. Susman
    Jonathan M. Sabin
600 Third Avenue
New York, New York 10016
jdaichman@kanekessler.com
dsusman@kanekessler.com
jsabin@kanekessler.com

*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan M. Sabin, certify that a true and correct copy of the foregoing

was served on counsel of record by email this April 15, 2024.

*/s/ Jonathan M. Sabin*
JONATHAN M. SABIN

17